UNITED STATES of America,
Plaintiff–Appellee,

v.

Adam STILLO, Sr. and Joseph T.
Stillo, Defendants–Appellants.

Nos. 94–2678, 94–2679.

United States Court of Appeals,
Seventh Circuit.

Argued April 5, 1995.

Decided June 9, 1995.

Rehearing Denied July 5, 1995.

Scott T. Mendeloff, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Div., Chicago, IL, Barry Rand Elden, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, Jonathan Drimmer (argued) Dept. of Justice, Washington, DC, for U.S.

Charles K. Piet (argued), Chicago, IL, Michael D. Ettinger, Ettinger & Pechter, Palos Hills, IL, for Adam Stillo, Sr.

Edward M. Genson, Marc W. Martin (argued), Genson, Steinback, Gillespie & Martin, Chicago, IL, for Joseph T. Stillo.

Before POSNER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

On July 29, 1993, a jury found Judge Adam Stillo guilty of racketeering and, along with his nephew, lawyer Joseph Stillo, conspiracy to commit extortion under color of official right. Both counts were based on Judge Stillo's corruption of the Cook County, Illinois, Circuit Court. Defendants appeal their convictions. We affirm.

## Background

Defense attorney Robert Cooley first met Judge Stillo at a party in 1976. Cooley asked the judge whom he should see to fix a criminal case assigned to Judge Stillo. Judge Stillo, knowing that Cooley was a frequent supplier of bribes to other judges and public officials, told Cooley that he would deal with him directly. Not long after the party, Judge Stillo accepted a bribe from Cooley to fix a misdemeanor case. Judge Stillo met with Cooley before trial and agreed to find Cooley's client not guilty. Af-

ter the trial Cooley met with Judge Stillo in his chambers. Cooley asked the judge whether $100 was an appropriate payment. Judge Stillo responded: "Whatever you think" and accepted the $100 in cash.

Between 1977 and 1983, Cooley bribed Stillo in five or six cases. Cooley would meet with the judge before trial and after a favorable disposition, Cooley would visit the judge in his chambers and pay him $100–$200 for fixing a misdemeanor and $1000–$2000 for fixing a felony. After the federal investigation into corruption among Chicago public officials became known in 1983, Cooley ceased paying bribes to Judge Stillo.

On August 4, 1986, Cooley, now working with the FBI, inquired of Judge Stillo if he was still accepting bribes for favorable rulings. The judge said yes and that the system was the same as before. In order to catch Judge Stillo in the act, the FBI filed the fictitious case of *People v. Hess* on August 20, 1986. According to the fictional court papers, James Hess—played by an undercover FBI agent—had been stopped for speeding and an illegal lane change by an Illinois state trooper. Noticing open beer cans, the trooper had searched the car and discovered marijuana.

The *Hess* trial was set for October 21, 1986, before Judge Stillo. On October 6, Cooley visited the judge in his chambers and asked whether he would suppress the marijuana in exchange for a bribe to which Judge Stillo agreed. Judge Stillo told Cooley that to "make it look better" he should file a memorandum of law in support of his motion to suppress. Judge Stillo told Cooley not to worry and to speak to his nephew attorney Joseph Stillo. Thereafter, Cooley telephoned Joseph Stillo and arranged a meeting. On October 10, 1986, the two met. Joseph Stillo told Cooley that he had spoken to his uncle, Judge Stillo. Joseph Stillo and Cooley then went to lunch to arrange to fix the *Hess* case.

Over lunch, Cooley explained the "facts" of the *Hess* case to Joseph Stillo and that he wanted to have the marijuana suppressed. Joseph Stillo agreed. Cooley also told Joseph Stillo that he would pay any amount the Stillos deemed fair, to which Joseph Stillo

also agreed. Cooley and Joseph Stillo arranged for Cooley to call Joseph Stillo the day before *Hess* was to go to trial and say "The party is tomorrow night. Are you gonna go?" to alert Joseph Stillo that *Hess* would be tried the following day and to confirm the fix. As they parted following lunch, Stillo reassured Cooley, saying, "I'll make the call.... Don't worry about it."

Cooley called Joseph Stillo the day before *Hess* was scheduled to go to trial to verify that the "benefit" was still on for the following day. Joseph Stillo answered affirmatively but the *Hess* trial was postponed.

*Hess* was finally tried to the court on November 5, 1986. A few days before, Cooley visited Judge Stillo to confirm that the bribe scheme was in place. Contrary to the agreement, however, Judge Stillo denied Cooley's motion to suppress the marijuana, found Hess guilty, and sentenced him to six months' supervision.

That afternoon Cooley visited Joseph Stillo's law office and was told that Judge Stillo had found Hess guilty because he looked like an undercover FBI agent. Joseph Stillo agreed to ask his uncle whether Cooley could seek a reduced sentence for Hess. On November 7, Cooley spoke directly with Judge Stillo who reiterated that he found Hess guilty because he looked like an FBI "plant."

On December 16, Cooley again spoke with Joseph Stillo, who told Cooley not to drop his attempt to seek favorable treatment for Hess because at the end of six months Judge Stillo could expunge Hess's conviction from his record. Six months thereafter, Cooley asked Judge Stillo to expunge Hess's supervision, and the judge issued an order to that effect.

On October 2, 1991, Adam and Joseph Stillo were charged in a two-count indictment. Count I charged Judge Adam Stillo with conducting and participating in the conduct of the affairs of an enterprise (the Circuit Court of Cook County) through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c) and 18 U.S.C. § 2. The first three predicate acts of racketeering activity charged Judge Stillo with accepting cash bribes from criminal defense attorneys for favorable rulings in violation of Illinois bribery laws (Ill.Rev.Stat. Ch. 38, ¶¶ 33–1(d) and (e)) and official misconduct (Ill.Rev.Stat. Ch. 38, ¶ 33–3). The fourth racketeering predicate act involved the *Hess* case and included four subpredicate acts the proof of any of which would suffice to establish the fourth predicate act. The four subpredicate acts were: (1) conspiring with his nephew, Joseph Stillo, to commit state bribery; (2) conspiring with Joseph Stillo to commit official misconduct; (3) state law bribery; and (4) conspiring with Joseph Stillo to commit extortion in violation of 18 U.S.C. § 1951.

Count II, also related to the *Hess* episode, charged both Stillos with conspiring from August 8, 1986 to April 1987 to commit extortion in violation of 18 U.S.C. § 1951.

On July 29, 1993, a jury found Judge Stillo guilty on both counts and Joseph Stillo guilty on Count II.[1] Judge Stillo was sentenced to four years' imprisonment and his nephew to two years' imprisonment and a $10,000 fine. According to our information both Stillos are serving their sentences.

### Discussion

#### I. Joinder

Joseph Stillo argues that the charge against him was improperly joined in the same indictment with those against his uncle, Judge Stillo. Alternatively, he argues that even if joinder was proper, the district court abused its discretion in denying his pretrial motion for severance.

■ Federal Rule of Criminal Procedure 8(b) permits defendants to be charged in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." We have construed this rule broadly to allow liberal joinder in order to enhance judicial efficiency. *United States v. Curry*, 977 F.2d 1042, 1049 (7th Cir.1992), *certiorari denied*, —— U.S. ——, 113 S.Ct. 1357, 122 L.Ed.2d 737. As we stated there, the rule

---

1. The jury found that Judge Stillo had committed the first and fourth predicate acts of racketeer-ing—including all the subpredicate acts except state law bribery.

recognizes that joint trials are beneficial not only for efficiency but because they limit inconvenience to witnesses, avoid delays in bringing defendants to trial, and allow the "total story" to be presented to a single jury. We review a claim of misjoinder *de novo*, *United States v. Coleman*, 22 F.3d 126, 134 (7th Cir.1994), but will only reverse a conviction if the misjoinder "results in actual prejudice because it 'had substantial or injurious effect or influence in determining the jury's verdict.'" *United States v. Schweihs*, 971 F.2d 1302 (7th Cir.1992), quoting *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814.

■ Count II charged the two Stillos with conspiracy to extort money from attorney Cooley. Both Stillos were alleged to have "agreed to work together to obtain money from Cooley" and to have met with Cooley on separate occasions to reach this end. It is well settled that a conspiracy charge is a proper basis for joinder under Rule 8(b) and it is clear that in this particular conspiracy both defendants "participated in the same series of acts or transactions." Joinder of defendants in this count was thus clearly proper.

■ The only real issue is whether Count I, the RICO count in which only Judge Stillo was named, was properly joined with the extortion count which involved Joseph Stillo as well. The government cannot bootstrap multiple defendants with similar but unconnected offenses into a single indictment by combining Rules 8(a) and 8(b) and the existence of overlapping defendants. *Schweihs*, 971 F.2d at 1322. If the RICO count were unrelated to the extortion count, *i.e.*, not part of the "same series of acts or transactions," joinder would indeed have been improper. But that is not the case. The *Hess* bribery scheme charged in Count II was also the fourth predicate act of racketeering in Count I. Because the overlapping *Hess* scheme was the sole predicate act to have occurred within five years of the indictment, it was a necessary element of the RICO claim against Judge Stillo. Therefore, severance of the two counts would have required trying the *Hess* episode twice. Moreover, the other predicate RICO acts in which Joseph Stillo

was not involved were earlier attempts by Judge Stillo to collect bribes from criminal defense lawyers and thus part of the same "series of acts or transactions" as the later *Hess* scheme. Joinder of both counts and defendants was thus proper under Rule 8(b).

■ Joseph Stillo contends that even if joinder was proper the district court abused its discretion in failing to grant a severance. Federal Rule of Criminal Procedure 14 provides:

> If it appears that a defendant or the government is prejudiced by a joinder of ... defendants ... for trial together, the court may order an election of separate trials or counts, grant severance of defendants or provide whatever other relief justice requires.

To establish an abuse of discretion by the trial court, Joseph Stillo must show that without a severance he was unable to obtain a fair trial, not merely that a separate trial would have offered him a better chance for acquittal. *United States v. Boykins*, 9 F.3d 1278 (7th Cir.1993).

■ Joseph Stillo complains of "prejudicial spillover" from the evidence of pervasive corruption relating to the predicate RICO offenses in which he was not involved. In order to succeed on this claim, Joseph Stillo "must rebut the dual presumptions that a jury will (1) capably sort through the evidence and (2) follow limiting instructions from the court to consider each defendant separately." *United States v. Lopez*, 6 F.3d 1281, 1286 (7th Cir.1993). He has not cleared either hurdle.

Because Joseph Stillo was only involved in the *Hess* episode, it was easy for the jury to compartmentalize the evidence involving Joseph Stillo and that transaction from Judge Stillo's earlier bribe taking. Moreover, the district judge gave frequent, clear, and explicit instructions to this effect.

Finally, the jury amply demonstrated its ability to sift through the evidence with particularity when it found that the government had not proven that Judge Stillo committed the two racketeering predicate acts involving bribery schemes with defense attorneys other than Cooley. Joseph Stillo's argument

that he was severely prejudiced by the spill-over from evidence which the jury found insufficient against Judge Stillo, at whom it was directed, is unconvincing.

## II. Sufficiency of the Evidence

Both Stillos challenge the sufficiency of the evidence supporting two elements of Count II, the extortion charge.

### A. Interstate Commerce

The Hobbs Act prohibits extortion which "in any way or degree ... affects [interstate] commerce." 18 U.S.C. § 1951(a). Because the Supreme Court has interpreted this statute to reach the limits of the Commerce Clause, *Stirone v. United States,* 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252, the burden on the government to establish this element is slight or *de minimis. United States v. Shields,* 999 F.2d 1090 (7th Cir.1993), *certiorari denied,* —— U.S. ——, 114 S.Ct. 877, 127 L.Ed.2d 74.[2] In this case as in *Shields,* the government relied on a "depletion of assets theory." If Judge Stillo had accepted a bribe from Cooley, the assets of Cooley's law firm, which it was established purchased items in interstate commerce, would have been depleted. Payment of the bribe thus would have the potential to affect the firm's ability to purchase goods in inter-state commerce—a nexus which this court has held sufficient on numerous occasions. See *United States v. Murphy,* 768 F.2d 1518, 1531 (7th Cir.1985), *certiorari denied,* 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304.

Defendants argue that the connection between potential bribe payments and the law firm's participation in interstate commerce fails at three points. None of their contentions, however, casts doubt on the jury's verdict. First, defendants question the connection between Cooley's assets and the purchase of goods by his law firm in interstate commerce. But the government presented numerous items purchased by the law firm in interstate commerce, including a calculator and will covers, and an office employee of Cooley's firm testified that such supplies were purchased from a common account to which the three members of the firm, including Cooley, made weekly contributions. Though the government did not trace the purchase of a particular out-of-state calculator to Cooley's contribution to the account, the general set-up was sufficient to support the jury's finding that the payment of a bribe by Cooley could potentially deplete the assets with which the firm purchased goods and services in interstate commerce.

Defendants next contend that based on Cooley's statement to Joseph Stillo at lunch that his client would be paying the bribe, Cooley's assets were not implicated. This argument fails for two reasons. First, the extortion conspiracy was already in place at the time of the luncheon conversation. It is the potential effect on interstate commerce at the time of the offense which is relevant. Later developments which negate or lower the potential effect on interstate commerce do not undermine the jurisdictional element. *United States v. Staszcuk,* 517 F.2d 53, 60 (7th Cir.1975) (en banc), *certiorari denied,* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56. Second, even if the Stillos believed from the start that the fictional *Hess* would ultimately

2. Following oral argument, Joseph Stillo submitted the Supreme Court's recent decision in *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626, in support of his argument on the insufficiency of the government's evidence linking defendants' actions to interstate commerce. In invalidating the federal ban on guns in school zones, *Lopez* made clear that not everything is possible under the Commerce Clause. In so holding the Court did not call into question the Hobbs Act which—unlike the school gun ban—is aimed at a type of economic activity, extortion, and contains an express jurisdictional element. Nor did the *Lopez* decision undermine this Court's precedents that minimal potential effect on commerce is all that need be proven to

support a conviction. "Where a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence." *Lopez,* at ——, 115 S.Ct. at 1629, quoting *Maryland v. Wirtz,* 392 U.S. 183, 197 n. 27, 88 S.Ct. 2017, 2024 n. 27, 20 L.Ed.2d 1020.

More relevant than *Lopez,* though not brought to our attention by defendants, was the Court's decision five days later in *United States v. Robertson,* —— U.S. ——, 115 S.Ct. 1732, 131 L.Ed.2d 714. In *Robertson,* the Court in a *per curiam* opinion reinstated the defendant's RICO conviction, holding that defendant's Alaskan silver mine was engaged in interstate commerce because it purchased supplies from out of state.

be footing the bill, the temporary depletion of Cooley's assets until repayment and the risk of non-payment would be sufficient to satisfy the *de minimis* interstate commerce requirement. See *United States v. Lewis,* 797 F.2d 358, 365 (7th Cir.1986), *certiorari denied,* 479 U.S. 1093, 107 S.Ct. 1308, 94 L.Ed.2d 162.

■ Defendants' final argument is that because the *Hess* case was a sham, the FBI and not Cooley or his law firm would ultimately have paid any bribe. This court rejected an identical argument in *Shields,* 999 F.2d at 1098, in which Cooley again working with the FBI attempted to bribe another Cook County Circuit Court judge. The ultimate source of potential bribe money was found irrelevant because "the Hobbs Act proscribes not just successful extortion schemes but attempts to induce a victim engaged in interstate commerce to part with property" and the intended victim was Cooley, not the FBI. *Id.* (citation omitted).

### B. Money

■ Joseph Stillo next argues that the government failed to prove that Joseph and Adam Stillo agreed between themselves to extort *money.* This argument fails on two levels. First, as a legal matter, an extortionist can violate the Hobbs Act without either seeking or receiving money or anything else. A loss to, or interference with the rights of, the victim is all that is required. See *United States v. Lewis,* 797 F.2d 358 (7th Cir.1986), *certiorari denied,* 479 U.S. 1093, 107 S.Ct. 1308, 94 L.Ed.2d 162. Second, as a factual matter the evidence was more than sufficient for the jury to find that the Stillos conspired to extort money in this case. Cooley testified that on every occasion in which he bribed Judge Stillo there was a cash payment. Moreover, in a taped conversation between Cooley and Joseph Stillo discussing the *Hess* case, Cooley stated: "You tell me what's fair and we'll take care of it then," and Joseph Stillo responded "Alright." Cooley testified that his statement meant, "You tell me how much money the two of you want and I'll pay." The jury could have accepted Cooley's more than plausible account of the conversation and infer from Joseph Stillo's

affirmative reply that he and his uncle were in agreement.

### III. Jury Instructions

■ Defendants contend that the district court wrongly instructed the jury regarding the interstate commerce element of the Hobbs Act and the *mens rea* required to commit the Illinois offenses of conspiracy to commit official misconduct, conspiracy to commit bribery and bribery. The district court's selection of a particular jury instruction is reviewed in the light most favorable to the government, and "[a]s long as the jury instructions, viewed as a whole, address the issues fairly and adequately, we will not interfere with the district court's selection." *United States v. Schweihs,* 971 F.2d 1302, 1324 (7th Cir.1992).

### A. Interstate Commerce

■ Joseph Stillo offered and the district court rejected the following instruction on interstate commerce:

> The interstate commerce element of affecting commerce by extortion is satisfied if the government proves beyond a reasonable doubt that Robert Cooley made monetary contributions to his law office around the time of the alleged conspiracy, and his law office used such contributions to purchase goods that originated from outside the state of Illinois.

The court rejected the proposed instruction because it would have required that the government trace Cooley's contributions to the common fund to actual purchases in interstate commerce. As the discussion in Part II A demonstrates, this is more than is required under our case law. The district court instructed the jury that:

> The interstate commerce element of the offense of affecting commerce by extortion is satisfied if the government proves beyond a reasonable doubt that the law office of Robert J. Cooley customarily purchased goods that originated from outside the state of Illinois such as materials necessary for the function of his law office.
>
> The law does not require an actual effect. In this case, you must simply determine whether the alleged extortionate

transaction, if completed, had the potential to affect commerce, however minimally.

Joseph Stillo claims two errors in these instructions: (1) that they do not require the jury to find that Cooley contributed to the funds used by the law firm to purchase out-of-state supplies, and (2) they do not require that the purchases in interstate commerce occurred at the time of the alleged extortion.

As to the first issue, it is true that the given instruction does not explicitly require that the jury find that Cooley contributed money to the firm's expense fund. The government's evidence on this point was, however, uncontradicted. Moreover, for the jury to find a potential effect on commerce according to the second prong of the instructions, it would have to find that the assets of Cooley's firm and not just his personal assets would be potentially depleted if a bribe were paid in the *Hess* case. Finally, since Cooley was acting in his professional capacity in his dealings with the Stillos, it was not necessary for the government to establish that Cooley contributed to the law firm's expense fund, since his law firm would probably (and that is all that is required) be liable for his business expenses (even illegitimate ones). See *United States v. Hocking*, 860 F.2d 769, 776–777 (7th Cir.1988) (approving instructions that required that the jury need only find that payor of bribe represented a business which purchased goods from out of state and that the bribe was paid on behalf of the business).

Joseph Stillo's complaint that the jury instruction did not require the jury to find a nexus with interstate commerce at the time of the extortionate act is also meritless. The given instruction adequately conveyed the requirement that the extortionate act have the potential to affect interstate commerce either immediately or in the future. That the potential exist at the time of the act and is not the result of some unforeseen change in circumstances is implicit in the instruction. Moreover, the potential effect on interstate commerce in this case was foreseeable at the time of the extortion.

### B. State Law Offenses

Judge Stillo attacks the instructions on the state law offenses predicate to his RICO offense, *viz.*, bribery and official misconduct, conspiracy to commit bribery and conspiracy to commit official misconduct. Because he did not object to these instructions at trial, we review only for plain error, *i.e.*, "if the error regarding the instruction would have probably changed the outcome of the trial." *United States v. Schulte*, 7 F.3d 698, 700 (7th Cir.1993).

Judge Stillo claims that the court failed to instruct the jury on the required *mens rea* that the bribe taker knew that the bribe was intended to influence the performance of his official duty. Judge Stillo is mistaken. The given instruction stated that "the government must prove ... that the defendant knew that the money was tendered or promised with intent to cause any act related to the defendant's employment or function as a public officer."

Judge Stillo's challenge to the court's instructions on conspiracy are equally groundless. Judge Stillo contends that the court's instruction left out the "mental state required to prove a conspiracy." The court instructed the jury that to convict on conspiracy to commit official misconduct, it must find that Judge Stillo "agreed with another to commit an offense, namely, that when in his official capacity, the defendant knowingly would accept for the performance of any act, a fee or reward which he knows was not authorized." In instructing on the Hobbs Act conspiracy the court underscored the necessary intent, stating that the government must demonstrate that "a conspiracy ... existed [and] the defendant knowingly and intentionally became a member of the conspiracy." These instructions more than adequately informed the jury that it must find an intent both to agree and to commit the underlying offense.

### IV. Conspiracy to Commit Bribery

Finally, Judge Stillo contends that the first subpredicate act of the fourth predicate act of his racketeering count, conspiracy to commit bribery, is not a legally cognizable offense. This claim fails on multiple levels. First, even if he is correct, it would not affect his RICO conviction since the jury found that

he had committed two of the three other subpredicate acts—any one would do. Second, even if he is correct (which the government contests and we need not decide) that in some cases bribery as an agreement between briber and bribee and conspiracy to commit bribery are coextensive where the briber and bribee are the alleged conspirators, that is not this case. The alleged conspiracy was between Joseph and Judge Stillo. Joseph's conspiratorial agreement with Judge Stillo is not the agreement between briber and bribee which is the *sine qua non* of the substantive crime of bribery. See, *United States v. Lechuga*, 994 F.2d 346, 349 (7th Cir.1993).

JUDGMENT AFFIRMED.