In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2360

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEITH COLLINS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 80—**Matthew F. Kennelly**, *Judge.*

ARGUED APRIL 1, 2010—DECIDED MAY 10, 2010

Before EASTERBROOK, *Chief Judge*, and BAUER and
HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* A jury convicted appellant
Keith Collins of possessing crack cocaine with intent to
distribute it and of conspiring to do the same. Collins
argues that the district court erroneously denied his
motion to suppress the evidence against him, that evi-
dence of his gun ownership and certain cocaine sales
should not have been admitted against him at trial, and

that the district court should have granted a mistrial. Also, when Collins was sentenced, the district court quite reasonably believed that it could not consider the disparity between the sentencing guidelines for crack cocaine and powder cocaine when imposing sentence. The parties agree that the Supreme Court's decision in *Kimbrough v. United States*, 552 U.S. 85 (2007), requires a remand for resentencing. We affirm Collins' convictions but remand his case to the district court for resentencing under *Kimbrough*.

*The Facts*

Based on information that Collins was involved in cocaine distribution, the United States Drug Enforcement Agency and Chicago Police Department began surveillance of Collins and his alleged co-conspirator Gregory McNeal. During that surveillance on January 24, 2003, DEA Special Agent William Warren radioed that he had observed Collins leave McNeal's residence and place a large plastic bag of what he thought was crack cocaine inside a black Ford Mustang driven by Collins' girlfriend Rokesha Johnson. The officers promptly arrested Collins and searched the Mustang, discovering a bag containing 673 grams of crack cocaine behind the driver's seat. A search of Collins revealed another small bag of crack cocaine. Upon questioning by Agent Warren, Collins confessed that he and McNeal had conspired to process and distribute crack cocaine over the past several months, and he admitted placing the cocaine in the Mustang. Collins also stated that he was delivering

the smaller bag of cocaine for sale to a nearby customer. Collins was indicted for possessing more than 50 grams of crack cocaine with intent to distribute and with conspiracy to do the same, with the conspiracy alleged to have occurred between approximately August 2002 and the day of Collins' arrest.

Before trial, Collins moved to suppress the evidence seized in the course of his arrest. At the hearing on that motion, Agent Warren testified that he had set up surveillance in an unmarked car approximately 50 yards south of the home where McNeal cooked the crack cocaine. To aid in his surveillance, Warren used a pair of binoculars and a camera with a telephoto lens. Warren was in regular contact with other law enforcement officers via radio, but he was the only individual with an unobstructed (but distant) view of Collins at the critical moments.

Warren testified that on the day in question, he observed Collins leave McNeal's house carrying a large brown paper bag. Collins walked to the passenger side of the Mustang, opened the passenger door, and pulled a clear plastic bag from inside the paper bag. Warren testified that, despite his distance from Collins, he recognized the substance inside the bag as crack cocaine. Collins then leaned into the passenger compartment of Johnson's Mustang, placed the plastic bag inside, closed the door, and walked away. According to Warren, Collins was at the Mustang for approximately a minute, and the bag of cocaine was visible for only a few seconds.

Warren took photographs of these events as they occurred, but he did not take any photograph showing

Collins holding the plastic bag of cocaine. His photographs show Collins approaching the Mustang with a large paper bag, leaning inside the Mustang, and then walking away with the paper bag. Chicago police officer Andrew Marquez, who was aiding in the surveillance that day, corroborated Warren's statements, however, testifying that Warren had radioed seeing Collins place a bag of cocaine into the Mustang. The defendants did not offer any conflicting testimony in the suppression hearing. The district court found Agent Warren's account of events credible and denied Collins' motion.

The case against Collins then proceeded to trial. Collins and McNeal were tried jointly, but because Collins' confession had implicated McNeal, the case was tried before two juries simultaneously. During the trial, one jury sometimes needed to be excused from the courtroom during the presentation of evidence inadmissible against the defendant whose case it was considering.

During the government's case-in-chief, the bag of crack cocaine was admitted into evidence, and Agent Warren testified regarding the events surrounding Collins' arrest and confession. Warren also testified that firearms and ammunition were recovered from Collins' residence. Pursuant to a plea agreement, Johnson testified against Collins, stating that she had dated Collins from June 2002 to the time of his arrest and that she had seen him sell cocaine approximately every other day during that time. Johnson explained that on the day of Collins' arrest, he had asked her to drive to McNeal's residence. When she arrived there, Collins came to the passenger

side of her Mustang with a brown paper bag, opened the passenger door, and placed a bag of crack cocaine in the back passenger compartment. Johnson also testified that Collins kept a gun under his mattress at home and that he had used a gun to shoot at a rat in an alley. Collins rested without calling any witnesses or presenting any evidence.

Because Collins and McNeal were tried jointly but to different juries, two sets of closing arguments were given, one to each jury. The closing arguments in Collins' case were first. His jury then began its deliberations while closing arguments were made to McNeal's jury. Before the closing arguments in McNeal's case concluded, Collins' jury sent a note to the judge asking to see a copy of a police report, if it had been admitted into evidence, and requesting a list of the exhibits that were admitted into evidence. The district judge responded that the report had not been admitted into evidence and that an exhibit list would be provided once McNeal's closing arguments had concluded. A short time later, before the promised exhibit list was made available, Collins' jury informed the court that it had reached its verdict.

Around this time, Collins' counsel realized that some exhibits that had been admitted into evidence—a map and photographs of a car similar to Johnson's Mustang—had not been provided to the Collins jury for use during its deliberations. The defense had used these exhibits to challenge Warren's credibility, arguing that they showed that Warren had significantly understated the

distance from which he had conducted his surveillance and that Collins could not have simply leaned inside the two-door Mustang without moving the passenger-side seat out of the way. Collins moved for a mistrial. The court denied the motion, noting that the jury knew how to request any exhibits it wished to review and that the jury was aware that a list of exhibits would be provided later that day. The court then received the jury's verdict, which found Collins guilty on all charges.

Collins later filed a post-trial motion renewing his motion to suppress in light of the evidence presented at trial and again requesting a new trial because not all of the admitted evidence was made available to the jury. The court denied the motion.

At sentencing, the district court determined that the applicable crack cocaine Guidelines range for Collins' offense was 188 to 235 months. The court also observed that the range was much higher than it would have been if Collins had been charged with conspiracy to distribute the same amount of powder cocaine. Collins argued that the court could take this sentencing disparity into account when determining a reasonable sentence. The district judge disagreed: "I don't believe it's really an open issue in this circuit . . . for me to take that disparity into account in imposing a sentence. The Seventh Circuit has essentially said that since *Booker* . . . ." (This statement at the time of Collins' sentencing in late 2005 anticipated our decision in *United States v. Miller*, 450 F.3d 270, 275-76 (7th Cir. 2006), which barred

district courts from mitigating the 100-to-1 powder-to-crack ratio because that ratio in the Guidelines reflected Congressional policy. The Supreme Court's decision in *Kimbrough v. United States*, 552 U.S. 85, 108 (2007), abrogated that holding in *Miller* and held that sentencing courts are not obliged to follow the 100-to-1 ratio when imposing sentences in crack cocaine cases.) Accordingly, the district court declined to take the Guidelines disparity into account and sentenced Collins to a below-Guidelines sentence of 144 months in prison. Collins now appeals his conviction and sentence.[1]

*Analysis*

I. *The Motion to Suppress*

Collins first argues that the district court erred by denying his motion to suppress and by crediting Agent Warren's testimony. Warren was the only law enforcement officer who claimed to have seen Collins with the incriminating bag of cocaine, so probable cause for Collins' arrest (and the suspicion for the stop of Johnson's Mustang) depended on Warren's credibility. To challenge Warren's credibility, Collins points out, among other

---

[1] Most cases with *Kimbrough* issues have been resolved long before now, but this appeal is actually Collins' second direct appeal from his conviction. This second appeal was allowed after Collins prevailed on his post-conviction claim that his first appellate counsel provided only ineffective assistance. See *United States v. Collins*, 510 F.3d 697 (7th Cir. 2007).

things, that none of the photographs actually show him with the plastic bag of cocaine, and he argues that Warren was too far away to recognize the substance in the bag. The government argues that Warren's use of binoculars and a camera with a telephoto lens enabled him to observe the rather large bag of cocaine even at a distance, and that Warren's failure to photograph Collins with the cocaine was explained by the camera's slow mechanism and the fact that he was juggling the camera, the binoculars, and two radios.

We review a district court's factual determinations on a motion to suppress for clear error. *United States v. Burnside*, 588 F.3d 511, 516-17 (7th Cir. 2009), citing *United States v. Mosby*, 541 F.3d 764, 767 (7th Cir. 2008). Particular deference is given to credibility determinations, which will not be disturbed unless "completely without foundation." *United States v. Salyers*, 160 F.3d 1152, 1162 (7th Cir. 1998), citing *United States v. Ferguson*, 35 F.3d 327, 333 (7th Cir. 1994). Finding the facts can be very difficult in cases like this, and appellate courts add little to the task, even if the trial court has credited testimony that might seem improbable at first. Unless the trial court has credited testimony that is contrary to the laws of nature or so internally inconsistent or implausible on its face that no reasonable factfinder would credit it, we defer to the trial court's finding. See *United States v. Cardona-Rivera*, 904 F.2d 1149, 1152 (7th Cir. 1990).

We cannot conclude that the district court's credibility assessment completely lacked foundation. Our review of the proverbial cold record indicates that some aspects

of Warren's testimony seem unlikely, such as his apparent ability to identify crack cocaine at a great distance. Yet his uncontradicted testimony did not rise to the level of impossibility. Although Warren observed the crack cocaine at a substantial distance, his vision was aided by binoculars or his camera's telephoto lens. Furthermore, much of Warren's story was corroborated by his photographs, as well as the testimony provided by Johnson and Officer Marquez.

The record shows that the district judge fully understood the issue and gave close attention to the evidence. Taken as a whole, the record reveals a difficult question of credibility that the district judge ultimately resolved in the government's favor. Collins and the other defendant offered no evidence contradicting Agent Warren's testimony. There are at least two plausible interpretations of the record, and the district court's choice of the interpretation Collins disfavors did not amount to clear error. See *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."); *United States v. Sainz-Preciado*, 566 F.3d 708, 713 (7th Cir. 2009), quoting *United States v. Hatten-Lubick*, 525 F.3d 575, 580 (7th Cir. 2008).

## II. *Evidence of Firearm Possession*

Collins objects to the government's introduction of evidence that he possessed and used (for the mundane purpose of shooting at a rat in an alley) two handguns and ammunition. Collins argues that this evidence was

unfairly prejudicial and should have been excluded under Federal Rule of Evidence 403.

Under Rule 403, relevant evidence may be excluded if it is so unfairly prejudicial that it will cause the jury to decide the case on an improper basis rather than on the evidence. See *United States v. Pulido*, 69 F.3d 192, 201 (7th Cir. 1995), quoting *United States v. Vretta*, 790 F.2d 651, 655 (7th Cir. 1986). Because Collins did not object to this evidence at trial, we review only for plain error. We could reverse only if exclusion of the evidence "probably would have resulted in an acquittal." *United States v. Rangel*, 350 F.3d 648, 650 (7th Cir. 2003), citing *United States v. Krankel*, 164 F.3d 1046, 1052 (7th Cir. 1998). Plain error review poses a particular challenge for Collins' Rule 403 argument because he must show that the evidence was so "obviously and egregiously prejudicial" that the trial court should have excluded it even without any request from the defense. See *United States v. LeShore*, 543 F.3d 935, 939 (7th Cir. 2008).

Collins cannot overcome the obstacle posed by the plain-error standard of review. The evidence regarding his possession of guns and ammunition was only slightly prejudicial, if at all. The trial testimony indicated only that Collins owned guns, one of which he had used to shoot at a rat. Furthermore, Collins' counsel elicited testimony on cross-examination indicating that Collins possessed the guns legally. Millions of Americans lawfully possess and use firearms, and they have a constitutional right to do so. See *District of Columbia v. Heller*, 128 S. Ct. 2783, 2799 (2008). This testimony was relevant, see, *e.g.*, *United States v. Rhodes*, 229 F.3d 659, 661 (7th Cir. 2000),

citing *United States v. Wyatt*, 102 F.3d 241, 248 (7th Cir. 1996), and it was not so prejudicial as to have met the plain-error standard. The government did not use this evidence in an unfair manner, such as to show that Collins was a danger to the community, though it pointed out that guns are tools of the drug trafficking trade. See *Anderson v. Sternes*, 243 F.3d 1049, 1055 (7th Cir. 2001) (concluding that a court would be "hard pressed" to find unfair prejudice where, "in discussing the weapons during trial and in closing argument, the government focused only on its theory about the relevance of the weapons; the government did not argue that Anderson was a bad person because he kept guns"). The admission of this evidence against Collins was not so prejudicial as to constitute plain error.

III. *Evidence of Crack Cocaine Sales*

Collins also objects to Johnson's testimony that, during the course of their relationship, she observed him sell crack cocaine on numerous occasions. Collins initially objected to this testimony on the grounds of a lack of foundation and the difficulty of cross-examining Johnson. On appeal, Collins raises a new objection that this testimony constituted evidence of prior bad acts made inadmissible by Federal Rule of Evidence 404(b).[2] As a result

---

[2] In passing, Collins' brief makes a perfunctory mention of the need for Rule 403 analysis of this evidence, but he did not develop that argument. As we have said numerous times,

(continued...)

of defendant's shift in the argument, our review is for plain error. *United States v. Wynn*, 845 F.2d 1439, 1442 (7th Cir. 1988), citing *United States v. Laughlin*, 772 F.2d 1382, 1392 (7th Cir. 1985).

Collins has not shown plain error. First, the bulk of the cocaine sales that Johnson described—those that took place between August 2002 and the time of Collins' arrest—occurred during the time frame of the charged conspiracy and are not "prior bad acts" as that term is understood. Cf. *United States v. Macedo*, 406 F.3d 778, 792 (7th Cir. 2005) (applying Rule 404(b) analysis to evidence of drug sales made nine years before charged offense). Rather, these sales were evidence of the very drug distribution conspiracy with which Collins was charged. Rule 404(b) did not apply. *E.g.*, *United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009) ("When evidence is embraced by the conspiracy in the indictment, the court need not resort to Rule 404(b) analysis."); *United States v. Watts*, 535 F.3d 650, 659-60 (7th Cir. 2008) (rejecting defendant's Rule 404(b) challenge to evidence of defendant's acts in furtherance of conspiracy as bordering on frivolous). Johnson's testimony about these sales was properly permitted.

Johnson's testimony about drug sales during her relationship with Collins also included cocaine sales in June and July of 2002, shortly before the first specific

---

[2]  (...continued)
undeveloped arguments are deemed waived on appeal. *E.g., United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

date of the charged conspiracy. Even if these sales might have been subject to Rule 404(b) analysis, and even if their admission might have been plainly erroneous (which we doubt), we could not conclude that this testimony prejudiced Collins. The evidence of Collins' guilt—the crack cocaine itself, Agent Warren's testimony, Johnson's testimony corroborating Warren's testimony and implicating Collins in the conspiracy, and Collins' own confession—was overwhelming. As a result, even if this portion of Johnson's testimony might have been admitted in error, it was merely cumulative. Its exclusion would not have made an acquittal probable. See *Rangel*, 350 F.3d at 650.

As a final note, in the course of his Rule 404(b) argument, Collins complains that nothing explicitly connected any of these drug sales with the charged conspiracy. Even if we were to construe this as an argument that Johnson's testimony lacked a proper foundation, we note that "no rule of evidence requires a 'foundation'" and that the rules of evidence generally make all relevant evidence admissible. *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637-38 (7th Cir. 2001). This evidence of Collins' active crack cocaine distribution during and just before the time of the alleged conspiracy was relevant to show his involvement in the conspiracy. It is theoretically possible that Collins' sales observed by Johnson were entirely separate from his admitted conspiracy with McNeal, but that theoretical possibility did not prohibit admission of this evidence.

IV. *Motion for Mistrial*

Collins argues that the district court erred when it denied his motion for a mistrial after it was discovered that the map and photographs of a Mustang resembling Johnson's car were not provided to the jury during its deliberations. Without every defense exhibit readily available to the jury, Collins contends, the jury was unable to consider properly his arguments challenging Agent Warren's credibility. We review the denial of Collins' motion for an abuse of discretion. *United States v. Magana*, 118 F.3d 1173, 1183 (7th Cir. 1997), citing *United States v. Best*, 939 F.2d 425, 429, 431 (7th Cir. 1991) (en banc).

The district court acted reasonably by denying the motion for a mistrial. Generally, a mistrial is appropriate when an event during trial has a real likelihood of preventing a jury from evaluating the evidence fairly and accurately, so that the defendant has been deprived of a fair trial. See, *e.g.*, *United States v. Curry*, 538 F.3d 718, 727 (7th Cir. 2008), citing *United States v. Danford*, 435 F.3d 682, 686 (7th Cir.2006). When deciding whether a mistrial is warranted because admitted evidence was not provided to the jury, "a new trial is required if there is a reasonable possibility that a party is prejudiced by the district court's failure to provide certain exhibits to the jury, even if the exhibits are properly admitted." *Deicher v. City of Evansville*, 545 F.3d 537, 543 (7th Cir. 2008). It is possible, of course, to imagine some circumstances in which even the inadvertent omission of certain evidence from the jury room could plausibly have such

an effect. Based on the facts of this case, however, we are confident that the omission of these exhibits did not prejudice Collins by impeding the jury's ability to consider fairly and accurately the information contained in them.

Absent some special circumstance, a failure to make an exhibit available to a jury during deliberations is no cause for a mistrial, particularly when the trial was short and the information is such that it "should be fresh in the jurors' minds." *Deicher*, 545 F.3d at 545, citing *United States v. Guy*, 924 F.2d 702, 708 (7th Cir. 1991). Collins' trial was relatively short, making it unlikely that the jury had forgotten over time that these particular exhibits had been admitted at trial. Collins' counsel had discussed the exhibits during closing arguments, which had served to refresh the jurors' memories earlier that same day. And it is not as if the missing exhibits contained information that the jury could not readily recall without the aid of the exhibits themselves. The map was used to argue that Agent Warren's testimony was unreliable because he had actually observed Collins from a greater distance than he had described. The pictures were used to argue that Warren's account of events was incomplete (and therefore unreliable) because he never mentioned that Collins had moved the Mustang's front passenger seat to place the cocaine in the car's rear passenger compartment. The absence of either exhibit from the jury room did not prevent the jury from considering these common sense arguments so as to deny Collins a fair trial.

The general rule stated in *Deicher* and *Guy* does not apply when a district court fails to provide admitted

evidence to the jury in an evenhanded manner. See *United States v. Salerno*, 108 F.3d 730, 745 (7th Cir. 1997); *United States v. Hofer*, 995 F.2d 746, 749 (7th Cir. 1993); *United States v. Samples*, 713 F.2d 298, 303 (7th Cir. 1983). The cases Collins cites only reflect this exception. In *Deicher*, for example, the judge had provided the jury with information supporting the defendant's theory but had refused to allow the jury to review an exhibit that supported the plaintiff's contrary theory. 545 F.3d at 544. Similarly, in *United States v. Garza*, the district court had allowed the jury to review a letter admitted into evidence regarding the terms of a plea agreement but had refused to permit the jury to review seven defense exhibits calling that letter's accuracy into question. 574 F.2d 298, 300 (5th Cir. 1978). Here, however, there is no concern that the evidence provided to the jury reflected only the government's theory of the case. No evidence was admitted to contradict the photographs. The excluded map was a government exhibit, and for obvious reasons, the government introduced no evidence calling that map into question. Thus, the questions of fairness and balance in *Garza* and *Deicher* are simply not present in this case. The district court did not abuse its discretion by denying Collins' motion for a mistrial.

V. *Sentencing*

Finally, the parties agree that resentencing is necessary because the district court believed that it could not take into account the disparity between the Sentencing Guide-

lines advisory ranges for powder and crack cocaine when determining Collins' sentence. Legal developments after Collins' sentencing revealed that the district court erred, not through any fault of its own, but by following or anticipating this court's decisions before the Supreme Court's decision in *Kimbrough* authorized district courts to consider the disparity when exercising their discretion under 18 U.S.C. § 3553(a). See 552 U.S. at 108. Because Collins raised the sentencing disparity at sentencing, and because we cannot determine with any certainty whether the district court would have sentenced Collins differently if it had been aware of its discretion under *Kimbrough*, a remand for resentencing is warranted. See *United States v. Padilla*, 520 F.3d 766, 774 (7th Cir. 2008) (remanding crack cocaine sentence for reconsideration under *Kimbrough*).

We AFFIRM Collins' convictions and REMAND his case to the district court for resentencing.