NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2011
Decided August 26, 2011

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 10-2725

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 08 CR 403-2 |
| ANTHONY VALENTINO, *Defendant-Appellant.* | Rebecca R. Pallmeyer, *Judge.* |

**O R D E R**

Anthony Valentino, an investigator in the City of Chicago's Department of Zoning, was convicted after a jury trial of accepting a bribe in exchange for a favorable zoning inspection, 18 U.S.C. § 666(a)(1)(B), and was sentenced to 31 months' imprisonment. He now challenges his conviction, arguing that the district judge erred by (1) refusing to sever his case and try him separately from his two codefendants, and (2) denying his midtrial motion for a mistrial. We affirm the judgment.

In August 2008 a grand jury returned a three-count indictment against Valentino, Petru Cladovan, and Thomas Ziroli. Count One alleged that Cladovan, a Chicago real-estate developer who owned a building at 2754 West Washington Boulevard (the "Washington Property"), gave $2,000 to "Individual A," a professional "expediter" who assisted

developers in obtaining approval from the City of Chicago for construction projects. Cladovan paid this money between June and August 2007, allegedly intending to influence and reward City agents for helping him acquire a Certificate of Occupancy for his Washington Property, in violation of 18 U.S.C. § 666(a)(2). Counts Two and Three separately charged Valentino (a City zoning investigator) and Ziroli (a City ventilation and furnace inspector) with accepting $500 each from Individual A between mid-July and August 2007. The indictment alleged that Valentino and Ziroli intended to be influenced and rewarded in exchange for providing inspections and Certificates of Occupancy for the Washington Property, in violation of § 666(a)(1)(B).

Valentino moved under Federal Rule of Criminal Procedure 14(a) for a severance. He argued that joining the three defendants in a single indictment violated Federal Rule of Criminal Procedure 8(b) (though he did not ask that the indictment be dismissed). According to Valentino, the indictment did not allege that the three defendants participated in a common scheme or that they were coconspirators. The evidence likely to be introduced by the government against Cladovan and Ziroli, he insisted, would be inadmissible against him, and the resulting prejudice caused by the jury's inability to separate the evidence could not be cured with limiting instructions. The district judge denied the motion, reasoning that the evidence necessary to prove the charge against each defendant would overlap "substantially" because both Valentino and Ziroli allegedly had accepted money from Individual A during the same time period in exchange for their help in getting a Certificate of Occupancy for the Washington Property. And, the court continued, the indictment effectively alleged that the defendants had participated in the same "series of acts or transactions" constituting the offenses. Finally, the court concluded that, given the simple charges and overlapping evidence, a joint trial would promote efficiency and convenience, and that limiting instructions would be used when necessary. Valentino later renewed his motion to sever, and the court denied it again.

Also before trial the government filed a notice of intent to offer "other act" evidence, *see* Fed. R. Evid. 404(b), about a bribe that Cladovan had paid to another, unindicted City employee using Individual A as an intermediary, and about previous bribes that Valentino and Ziroli had separately accepted through Individual A from other, unindicted developers. The district court overruled objections from Valentino and Ziroli, reasoning that evidence of past bribes was probative of intent, knowledge, and absence of mistake. But the court deemed the proposed evidence inadmissible against Cladovan, reasoning that it was "too ambiguous to enlighten the jury" about Cladovan's intent in the charged bribe.

Valentino and his two codefendants were tried together in March 2010. Ten witnesses testified during the nine-day trial. Seven were City of Chicago employees, who explained the steps in getting a Certificate of Occupancy and processes within the relevant

City departments. Two more of the witnesses were City investigators who testified about their undercover surveillance of the defendants. And the government's star witness was Catherine Romasanta, the expediter and government cooperator identified in the indictment as "Individual A." She explained that legitimate "expediters" assist real estate developers in obtaining permits from City Hall, but she was paid to funnel bribes to City officials for overlooking building-code violations. Romasanta had pleaded guilty to violating § 666 and agreed to cooperate with the government in exchange for a favorable sentencing recommendation. Her recorded conversations with the defendants were played for the jury during the trial.

Romasanta testified that Cladovan contacted her in June 2007 about his Washington Property. During that recorded conversation Cladovan revealed that he wanted to sell the property but could not because the title was clouded by a permanent injunction stemming from building-code violations. He told Romasanta that he needed electrical, plumbing, ventilation, and new-construction inspections, and a final Certificate of Occupancy for the building to complete a sale. Romasanta asked Cladovan whether he had a "budget to do whatever we need" to obtain the certificate. She testified at trial that this inquiry was a "code" for whether Cladovan would be willing to pay bribes for favorable inspections. Romasanta later told him, in another recorded conversation, that her total fee would be $3,500, which included her expediting fee of $1,500 and $2,000 for the inspectors. She testified that she "needed the $2,000 to pay the inspectors the bribe money for giving the final approval for the certificate of occupancies." Cladovan agreed to that fee.

Romasanta later testified about her conversations with Ziroli and Valentino and their acceptances of the bribes charged in the indictment. After the district judge instructed the jury that Ziroli's statements were admissible against him alone, and gave the same instruction regarding Valentino, Romasanta testified about Ziroli's 2007 acceptance of the $500 bribe in exchange for inspecting the Washington Property.

The jurors heard similar evidence about Valentino. First they heard a recorded conversation from July 17, 2007, in which Valentino told Romasanta that he had been assigned to inspect the Washington Property, and that he had spoken to Cladovan to arrange an inspection for the next morning. Romasanta told Valentino that Cladovan was her client and directed him to update her on the inspection. She added that they would "just do the usual" and explained to Valentino that Cladovan was aware of a possible "situation" regarding the property's basement units and would do "whatever it takes." Valentino replied, "Okay got you." At trial Romasanta testified that she told Valentino that Cladovan was her client so that he could "basically overlook any issues at the property." And, she added, Valentino knew that she would pay him to do so. She explained that her statement that they would "just do the usual" meant that Valentino would receive a bribe in exchange

for the Certificate of Occupancy on the Washington Property. When she said that Cladovan would do "whatever it takes," she meant that he "would be willing to pay a bribe" in exchange for the zoning inspection and certificate. She understood Valentino's reply, "Okay got you," to mean that he agreed "to approve the certificate of occupancy in exchange for a bribe payment."

The jury then heard a conversation recorded after Valentino inspected Cladovan's property the next morning. Valentino called Romasanta to tell her that Cladovan needed to correct "a few little things" but that "it shouldn't be a big deal." Valentino then said, "I'm going to leave this one to you because, um, I know he needed it and I know, ahh, that his attorney I guess went down there to get a continuance." Romasanta testified that she understood Valentino's statement to mean that he would leave it up to her to get the expected payment from Cladovan and pass it along. In another recording the jury heard Valentino tell Romasanta that the Washington Property "had a couple of issues" though he "forgot what the hell they were because I didn't write any of them down." (Earlier in the trial another Department of Zoning employee had testified about zoning investigators' duty to record their observations about violations.) Valentino instructed, "But just tell him he had—he had a number of—a couple of issues and you know he got passed anyway, so." Finally, Valentino said, "Whenever you get it together, just let me know." Romasanta testified that she understood Valentino's statements to mean that she should inform him when she got the bribe money together.

The jury then heard recorded conversations in which Romasanta agreed to meet Valentino and give him his money on August 8. Romasanta testified that government agents outfitted her with a recording device and gave her an envelope containing $500 in currency. The agents drove her to the meeting place and filmed her giving the cash-filled envelope to Valentino; he accepted it. The jury saw the video and heard the City investigators' testimony about their recording of that video.

Earlier in the trial, Romasanta had provided evidence under Rule 404(b) about Ziroli and Valentino's previous bribes. She testified that she had paid Ziroli two bribes on behalf of third parties totaling $800 in exchange for favorable ventilation inspections of two properties in 2005, and that she had paid Valentino $8,500 in bribes on behalf of third parties for favorable zoning inspections of three properties between 2004 and 2007. Both before and after Romasanta provided this testimony, the district judge instructed the jury that it could consider "other act" evidence only as to each defendant individually, and only on questions of intent, plan, knowledge, or absence of mistake.

Romasanta also volunteered, however, that Cladovan had paid bribes in the past. During cross-examination, Romasanta had given conflicting testimony about whether a

specific phone conversation between herself and Cladovan concerned bribe payments; on redirect examination, the prosecutor asked her to clarify the testimony, and Romasanta responded that "Cladovan had paid me bribes in the past." Because this testimony violated the district court's pretrial ruling excluding evidence of other bribes against Cladovan, the judge granted Cladovan's motion for a mistrial and dismissed him from the case.

Valentino and Ziroli filed motions for a mistrial as well, arguing that Cladovan's absence from the trial would prejudice them. The judge denied those motions, concluding that both defendants were represented by experienced attorneys, and that Romasanta's mention of Cladovan's past bribes had "nothing to do with either of the defendants that remain on trial." The judge then instructed the jury that Cladovan was no longer on trial, that his absence was irrelevant, that the evidence against him was inadmissible against Ziroli and Valentino, and that Ziroli and Valentino retained the presumption of innocence. Before jury deliberations commenced, the judge reiterated these instructions and reminded the jurors that they must separately analyze the evidence regarding Valentino and Ziroli.

The jury found both Valentino and Ziroli guilty. Valentino then moved for a judgment of acquittal or a new trial, arguing that the evidence was insufficient to support his conviction and that the district judge erred in (1) denying his motion for a mistrial, (2) overruling his objection to the evidence under Rule 404(b), and (3) denying his pretrial motions to sever. The court denied this motion, concluding that there was sufficient and "powerful" evidence to support the bribery conviction. The court also concluded that the admission of evidence under Rule 404(b) against Valentino was appropriate because that evidence provided context about his intent and was limited through the use of jury instructions. Moreover, the court concluded that a pretrial severance would not have been appropriate because both Valentino and Ziroli allegedly accepted bribes from the same expediter in return for overlooking possible code violations at the same building, such that a joint trial promoted efficiency and did not prejudice the defendants. Finally, the court determined that, in light of its instructions that the jury must consider the evidence against each defendant separately. They were not to speculate upon the reasons for Cladovan's absence. Also, because of the jury's ability to follow instructions in this "very straightforward case," Ziroli and Valentino were not entitled to a mistrial.

On appeal Valentino first argues that the district judge erred by refusing to sever his case for trial. His brief weaves the contention into overlapping claims: that the joinder was impermissible under Rule 8(b), and that, even if permissible, was prejudicial.

Rule 8(b) permits joining multiple defendants who allegedly participated in "the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). We look only to the face of the indictment (and not the conduct proved at trial) to determine

whether misjoinder occurred, *United States v. Warner*, 498 F.3d 666, 699 (7th Cir. 2007); *United States v. Lanas*, 324 F.3d 894, 899 (7th Cir. 2003). Courts liberally construe the rule to promote judicial efficiency, limit inconvenience to witnesses, and allow the "total story" to be presented to a single jury, *Warner*, 498 F.3d at 699; *United States v. Stillo*, 57 F.3d 553, 556-57 (7th Cir. 1995). And even in the face of misjoinder, reversal is unnecessary in the absence of prejudice to the defendant. 28 U.S.C. § 2111; *United States v. Lane*, 474 U.S. 438, 449 (1986); *Stillo*, 57 F.3d at 557.

Valentino contends that the indictment did not allege that he and his two codefendants entered into a conspiracy or had a common scheme, nexus, or plan. Instead, he urges, the charging document consisted of "three separate indictments of three separate individuals for three separate and wholly unrelated offenses, jammed together into one charging instrument"; at most, he insists, the indictment alleged offenses of a "similar character." Further, he asserts, the indictment did not allege that any defendant "knew of anything more than his own individual transaction with 'Individual A.'"

But Rule 8(b) does not require that all defendants be charged in the same count, nor that each defendant participate in precisely the same act or transaction. *See Warner*, 498 F.3d at 699. Instead, the rule permits joinder of defendants engaged in a series of acts that are logically related. *United States v. Cavale*, 688 F.2d 1098, 1106 (7th Cir. 1982). What is necessary is a common plan or scheme, *Lanas*, 324 F.3d at 899, which turns on whether the transactions are interconnected in time, place, and manner. *Cavale*, 688 F.2d at 1106; *United States v. Santoni*, 585 F.2d 667, 673 (4th Cir. 1978). A typical relationship justifying joinder is the defendants' mutual reliance on a common third party to link their individual, yet similar, schemes. *See United States v. Phillips*, 239 F.3d 829, 838 (7th Cir. 2001) (upholding joinder where codefendants' membership in same gang linked their separate crimes including drug and weapon offenses and violent crimes in aid of racketeering); *United States v. Greenleaf*, 692 F.2d 182, 187 (1st Cir. 1982).

In this case, the face of the indictment makes plain the alleged relationship between the three codefendants: between June and August 2007 in Chicago, Cladovan gave money to Romasanta, who in turn paid Valentino and Ziroli equal sums, separately but in similar fashion, to overlook any code violations necessary for Cladovan to receive a Certificate of Occupancy for the Washington property. These three transactions, as alleged in the indictment, therefore involved geographic and temporal proximity as well as the "common links" of the same developer, the same property, the same expediter, and the common goal of obtaining a Certificate of Occupancy.

Valentino counters that joinder was improper because the indictment did not allege that the defendants knew about each other's roles in the overall scheme. But we do not

require allegations of such knowledge for proper joinder. *See United States v. Buljubasic*, 808 F.2d 1260, 1262 (7th Cir. 1987) (upholding joinder where indictment charged common scheme to commit arson and prosecutors knew "at the time of the indictment" that defendant denied "from the beginning knowing about or having anything to do with the arson, or even knowing" his codefendant).[1]

Although joinder was not technically improper, even if it had been Valentino has not shown that the joinder harmed him. He argues that his inclusion in the joint indictment prejudiced him by signaling a "silent, improper 'birds of a feather' argument," making his guilt appear more likely. But he has not shown exactly how "silent" messages arising from the fact of joinder prejudiced the jury beyond the witness testimony, audio recordings, and videotapes presented during the trial. Furthermore, even if Valentino had been tried separately, the jury still would have heard testimony of his acceptance of previous bribes from Romasanta, heard the telephone calls between him and Romasanta about inspecting the Washington Property, and seen the video tape showing his acceptance of the cash-filled envelope. Given this evidence of guilt, the joint indictment did not prejudice him.

As his fallback position, Valentino argues that even if joinder were proper the district court abused its discretion by denying his motions under Rule 14(a) to sever his case for trial. Although there is a strong preference for joint trials in light of concerns about efficiency and fairness, *see Zafiro v. United States*, 506 U.S. 534, 537 (1993); *United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009), severance is warranted when the consolidation actually prejudices a defendant and that prejudice outweighs the economy of a joint trial, *see* Fed. R. Crim. P. 14(a); *Zafiro*, 506 U.S. 539; *Alviar*, 573 F.3d at 539. When evaluating the denial of a motion to sever, we give "great deference" to the district court, "which is best

---

[1] Although the Seventh Circuit's position is the prevailing view in most other circuits,the exception is the Eighth Circuit. Valentino relies upon the statement in *United States v. Bledsoe*, 674 F.2d 647, 656 (8th Cir. 1982), that "[i]n order to be part of the 'same series of acts or transactions,' acts must be part of one overall scheme about which all joined defendants knew and in which they all participated." That proposition is still recited by district judges in the Eighth Circuit, *e.g.*, *United States v. Bradley*, 2010 WL 346384, at *2 (D.S.D. 2010), but the appellate court has not repeated it, and half of the active judges criticized it in *United States v. Grey Bear*, 863 F.2d 572, 585-86 (8th Cir. 1988) (en banc) (separate statement of Lay, Chief J., with whom Heaney, J., McMillian, J., Arnold, J., and Wollman, J., joined). Thus, *Bledsoe* would be weak authority even if we had not rejected the proposition for which is stands. For these reasons, joinder of the three defendants in the single indictment was proper under Rule 8(b), and so the purported misjoinder was not a basis for severing Valentino from his codefendants.

able to assess the benefits and hazards of a joint trial," *Phillips*, 239 F.3d at 838, and is capable of controlling the evidence and arguments, *Buljubasic*, 808 F.2d at 1263.

Valentino argues that separate trials would have promoted efficiency because there "would have been little to no repetition of evidence," but the record shows otherwise. Although Romasanta's testimony about Ziroli's past bribes would have been inadmissible at a separate trial for Valentino, her testimony about Cladovan would have been admissible; her testimony about Cladovan's need for a Certificate of Occupancy for the Washington Property provided context for her subsequent offer and for Valentino's acceptance of a $500 bribe for that certificate. And the remaining nine witnesses testified about issues common to all defendants, such as City policies and surveillance methods. Their appearance at three trials would have been wasteful.

Apart from efficiency concerns, Valentino maintains that he was prejudiced by the joint trial because the jury heard "voluminous evidence" against the other defendants, including details of Ziroli's past uncharged bribes, and that this evidence had a "spillover effect" that necessarily contaminated the jury's evaluation of his case. He also asserts that the district court's limiting instructions were insufficient to guide the jury, making their confusion "all but certain." But in this case the district judge provided clear limiting instructions about the evidence to the jury throughout the trial, and we presume that jurors can sort through the evidence against each defendant and follow limiting instructions, *Stillo*, 57 F.3d at 557; *see United States v. Alexander*, 135 F.3d 470, 478 (7th Cir. 1998). Valentino offers nothing specific to rebut that presumption, and nothing in the record shows that this jury was unwilling or unable to follow the court's instructions. *See United States v. Ochoa-Zarate*, 540 F.3d 613, 620 (7th Cir. 2008) (requiring a showing of "overwhelming probability" to rebut presumption that jury will follow instructions). Without more, this case was not too large and complex for jurors to handle. In light of the compelling interest in judicial economy and protecting witnesses from inconvenience, *see Richardson*, 481 U.S. at 210; *Stillo*, 57 F.3d at 556-57, the court did not abuse its discretion in denying Valentino's motions to sever.

Finally, Valentino argues that the district court abused its discretion when it denied his midtrial motion for a mistrial after granting Cladovan a mistrial. Valentino contends that evidence of Cladovan's prior bribery attempts suggested his own "guilt by association," and insinuates that once Romasanta triggered Cladovan's mistrial, her testimony should not have been used against anyone.

A district court, however, has "broad discretion" when deciding whether to grant a defendant's motion for a mistrial, *see United States v. Clarke*, 227 F.3d 874, 881 (7th Cir. 2000). Generally a mistrial is appropriate only when "an event during trial has a real likelihood of

preventing a jury from evaluating the evidence fairly and accurately, so that the defendant has been deprived of a fair trial," *United States v. Collins*, 604 F.3d 481, 489 (7th Cir. 2010). That happened only to Cladovan, because the jury heard evidence about bribes that the district judge had previously excluded. The judge told the jury to disregard Romasanta's statement about Cladovan's past bribes and not to speculate on the reasons for Cladovan's sudden absence, explaining that those reasons "are not relevant to any claims against" the remaining defendants. The judge then reminded the jury that evidence against Cladovan was inadmissible against the remaining defendants, and that Ziroli and Valentino retained the presumption of innocence. These clear and thorough instructions eliminated the danger that the jury would find Valentino guilty "by association" with Cladovan rather than on the evidence relevant to the charge against him individually. Moreover, the judge reiterated these instructions before the jury deliberated, and reminded the jurors again that they must separately analyze the evidence against Valentino and Ziroli. Valentino has not rebutted the presumption that the jury was capable of sorting through this evidence and following the limiting instructions.

AFFIRMED.