# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2121

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Darrin Roy Anderson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 21, 2011
Filed: January 4, 2012

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Darrin Roy Anderson pleaded guilty to one count of traveling with the intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b). The district court[1] sentenced him to 144 months' imprisonment, followed by a lifetime of supervised release. The district court also imposed special conditions of release prohibiting Anderson from consuming alcohol and possessing sexually explicit materials. Anderson appeals the length of his sentence as substantively unreasonable. He also appeals the special conditions of his release, arguing that the district court

_____

[1] The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota.

plainly erred by prohibiting him from consuming alcohol and possessing sexually explicit materials. We affirm.

## I. *Background*

In December 2006, 31-year-old Anderson created an online account on the social networking website Facebook under the alias "Tyler Anderson." Anderson used this alias to contact adolescent girls in the Red River Valley area of Minnesota and North Dakota. In 2009, Anderson, acting as "Tyler," used the account to contact M.R., a 13-year-old girl. "Tyler" introduced M.R. to his cousin "Darrin" online, and "Darrin" began texting M.R. After communicating several times, "Darrin" Anderson offered M.R. $300 in cash in exchange for sex and arranged to meet her at the East Grand Inn in East Grand Forks, Minnesota, on August 12, 2009. M.R. asked a friend, J.J., to accompany her to the motel because she was afraid to go alone. At the motel, Anderson provided the girls with alcohol, and J.J. waited in the bathroom while Anderson and M.R. had sex. Before he left the motel, Anderson put $300 on the dresser for M.R. and told her that he would pay her $50 for each future encounter.

On August 15, 2009, M.R.'s parents reported to East Grand Forks Police Detective Rodney Hajicek that their 13-year-old daughter, M.R., had sexual intercourse with an adult male, whom she met on Facebook. The mother had confiscated M.R.'s cell phone and was receiving text messages from Anderson. Because Detective Hajicek did not know Anderson's true identity, he encouraged the mother to pretend to be M.R. and to arrange another meeting. The mother and Anderson sent text messages back and forth, and the next day M.R.'s mother told Detective Hajicek that Anderson planned to meet M.R. at the East Grand Inn on August 18, 2009. Later, Detective Hajicek learned that a "Darrin Anderson" had reserved a room at the East Grand Inn for August 18, 2009, but then cancelled the reservation.

Detective Hajicek interviewed M.R. and J.J. and showed each of them a photo line-up with Anderson's picture. Both girls identified Anderson as the man who met them at the motel on August 12, 2009. Further investigation revealed that Anderson withdrew $200 on August 11, 2009, from a cash machine in Walhalla, North Dakota, where he worked. He withdrew another $200 from a cash machine in East Grand Forks, Minnesota, on August 12, 2009. Funds from the same account were used to pay for a room at the East Grand Inn on August 12, 2009.

Detective Hajicek obtained a search warrant for the Facebook account of "Tyler Anderson." The account revealed that, between December 2006 and July 2009, Anderson engaged in more than 800 private chats, mostly with adolescent girls. In the chats, Anderson represented himself as a young man in his teens or early twenties. He often flirted with the girls by telling them that they were "hot," "smokin," or "sexy" and asked them if they had boyfriends. On several occasions, Anderson sent images of male genitalia to the girls and asked for inappropriate pictures of them in return. Anderson told at least one girl other than M.R. that he had a cousin who "wants to like hook wit u" and exchange "sex for money."

On September 21, 2010, a federal grand jury indicted Anderson on one count of traveling with the intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b), to which Anderson pleaded guilty. According to the presentence investigation report (PSR), Anderson had one prior conviction in 2006 for driving under the influence of alcohol. The Guidelines range for Anderson's offense was 70 to 87 months' imprisonment, and the probation office recommended a sentence of 87 months' imprisonment, followed by five years supervised release. The probation office also recommended that the district court impose certain special conditions upon release, including that Anderson abstain from the use of alcohol and refrain from possessing any materials depicting or describing sexually explicit conduct. Following the preparation of the PSR, the district court filed a notice indicating its intent to vary upward from the Guidelines range. In a written memorandum, the government argued

that an upward variance of 33 months, or 120 months' imprisonment, was appropriate "given the egregious nature of the offense conduct . . . as well as [Anderson's] long history of sexual solicitation of young girls." Anderson argued that a Guidelines sentence was appropriate because the Guidelines took into consideration the seriousness of Anderson's conduct and his specific offense characteristics.

At sentencing, the district court considered that a similar offense, internet luring, carried with it a ten-year mandatory minimum sentence, and the court questioned the appropriateness of a Guidelines sentence in Anderson's case:

> THE COURT: How do you reconcile [a six-to-seven year Guidelines sentence for Anderson] with a 10-year mandatory minimum sentence for luring?
>
> [COUNSEL FOR ANDERSON]: I understand, Your Honor.
>
> THE COURT: I mean, I know you understand. I mean, you stand in this courtroom every day, but you tell me how it's—how do you reconcile—you know, this is—this statute contemplates a commercial sexual act. It's a Mann Act violation. It's the transportation of a woman across state lines or traveling in interstate commerce in order to engage in an illicit sexual act. It contemplates an adult woman and to come up with this [G]uideline range it certainly doesn't contemplate, as far as I tell, traveling across state lines to engage in an act of prostitution with a 13-year-old girl that you've groomed and lured, does it? I mean, does that seem to fit the [G]uideline calculation? Do you see anything in there where it talks about, you know, that you groomed somebody, that you've taken somebody under the age of 15? I mean, I don't see that in the [G]uidelines.

The district court determined that an upward variance was necessary to avoid unwarranted sentencing disparities, to reflect the seriousness of the offense, and to protect the public from further crimes of the defendant, explaining:

-4-

I honestly don't believe that the Sentencing Guidelines actually contemplate this type of an offense; that if you look at the underlying statute and the conduct that it involves I don't think that it adequately takes into consideration the facts of this case, which are pretty straightforward and pretty egregious . . . .

I mean, you just stop and think about what we're talking about here. We're talking about a middle-aged man prostituting a 13-year-old girl. We're talking about a middle-aged man offering $300 to a 13-year-old who's got other problems and is vulnerable. I mean, it's incredible in its perversity. The act is incredible in its objectification of a young girl. It's heartless. It's cruel. It's callous. It's depraved. It's perverse. And there's no other way to describe it. And that ain't the all of it.

In addition the defendant engaged in a pattern of grooming and soliciting others, engaged in a pattern of sending pornographic images to children. Defendant showed no remorse until he was caught, showed no regret, showed no moral compunction at all.

If you look at the sentences that are handed down in this court for things that in my opinion are far less depraved, 10-year period sentences for internet luring, lifetime sentences for dealing in drugs, 30-year sentences for drunks who abuse children while intoxicated that they pick up at a party, I mean, the notion that somehow seven years begins to approach the kind of sentence that would be appropriate is insane. . . . Child pornographers get 20 years in prison in this courtroom more than occasionally. What's worse? Trading pictures of being raped or . . . pay[ing] the children for the privilege of raping them?

The sentence needs to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense. This offense is as serious an offense as this Court sees short of crimes that result in the murder of people because it has the same consequence, all right? You rob a person of their innocence. You force them to live with that for the rest of their lives. . . .

\* \* \*

The sentence must afford adequate deterrence to criminal conduct, and I can assure you that any sentence that I impose will do that. It must protect the public from further crimes of the defendant. I think that is really the heart and so[ul] of this case. This is a case where the defendant engaged in a long-term project to take advantage of a young girl and in fact to take advantage of any number of young girls. The conduct was predatory. It involved grooming people for victimization and the defendant showed no remorse. This is a picture of a man who is capable of repeating the conduct.

* * *

In the end the Court's also required to consider the sentencing options that are available[,] and the Court's supposed to be concerned about disparity of sentencing. Ultimately that disparity of sentencing is the reason why I think a [G]uideline sentence is completely inappropriate in this case. I don't understand how it's possible that we would have a 10-year mandatory minimum sentence for just engaging in the chat and a seven-year sentence for following through in an act of prostitution following the chat. I mean, that strikes me as insane. And I think it only exists in the [G]uidelines and only exists in the statute because the Congress never contemplated this.

And so it is, by definition, an area not adequately contemplated by the Sentencing Guidelines . . . . It makes no sense to have a sentencing scheme that says a child pornography person who trades pictures goes to prison for a decade. A person who engages in the chat leading up to an internet luring offense gets a 10-year mandatory minimum sentence. But someone who crosses state lines to prostitute a 13-year-old following an internet chat should get seven years or six years. There's no way that that could be logically explained by any rational human being.

The district court sentenced Anderson to 144 months' imprisonment, followed by a lifetime of supervised release. The court placed certain special conditions on Anderson's release. The court prohibited Anderson from using alcohol, stating:

If you're wondering why I've arrived at the conclusion that you'll not be able to drink for the rest of your natural life, I suspect you have an alcohol problem. I think the DUI is an indication that there's such a problem. I also think that this behavior strikes me as indicative of some sort of underlying psychological problem that's compounded by the use of alcohol and that whatever the heck else is going on in your life drinking isn't going to make it any smarter or any better and so we're going to put a stop to that forever.

The district court also prohibited Anderson from possessing "any materials, including pictures, photographs, books, writings, drawings, computer images, videos, [or] video games which depict and/or describe sexually explicit conduct as defined in 18, United States Code, Section 2256(2), that's subdivision (2), and 2256 subdivision (8)."

## II. *Discussion*

Anderson appeals both the length of his sentence and the special conditions of his release. First, he contends that the length of his sentence is unreasonable because it is greater than necessary to comply with the purposes of sentencing. Second, he argues that the district court plainly erred by prohibiting him from consuming alcohol or possessing any sexually explicit material.

### A. *Substantive Reasonableness of the Sentence*

Anderson argues that his sentence of 144 months' imprisonment is substantively unreasonable for three reasons. We review substantive reasonableness for an abuse of discretion, "'tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range.'" *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). If a sentence is outside of the Guidelines range, "we 'may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" *Id.* at 461–62 (quoting *Gall*, 552 U.S. at 51). "Just because we 'might reasonably have

concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.'" *Id.* at 462 (quoting *Gall*, 552 U.S. at 51). "'[I]t will be the unusual case when we reverse a district court sentence . . . as substantively unreasonable.'" *Id.* at 464 (quoting *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008)).

First, Anderson contends that the district court abused its discretion by comparing the Guidelines range for his offense with sentences imposed for internet luring without recognizing that internet luring carries with it a ten-year mandatory minimum sentence. The sentencing transcript indicates that the district court made no such error. At sentencing, the court stated:

> I don't understand how it's possible that we would have a 10-year mandatory minimum sentence for just engaging in the chat and a seven-year sentence for following through in an act of prostitution following the chat. I mean, that strikes me as insane. And I think it only exists in the [G]uidelines and only exists in the statute because the Congress never contemplated this.

The district court was aware that the statute under which Anderson was convicted, 18 U.S.C. § 2423(b),[2] does not include a mandatory minimum sentence, whereas 18 U.S.C. § 2422(b),[3] the internet luring statute, includes a minimum sentence of ten

---

[2]Under 18 U.S.C. § 2423(b), "A person who travels in interstate commerce . . . for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both."

[3]Under 18 U.S.C. § 2422(b):

Whoever, using the mail or any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged

years. Anderson cites no authority for the proposition that a district court may not compare sentences of two similar offenses when one contains a mandatory minimum sentence and the other does not. In fact, in *United States v. Hill*, this court held that a district court did not procedurally err in comparing the defendant's prostitution offense, which did not have a mandatory minimum sentence, to other offenses, some of which did have mandatory minimum sentences. 552 F.3d 686, 692 (8th Cir. 2009). Reviewing the district court's sentence in *Hill*, this court found "no authority prohibiting a district court from comparing a defendant's crime to other types of crimes in an attempt to calibrate the relative severity of a defendant's conduct and impose an appropriate sentence." *Id.* Anderson suggests that, because the government did not charge him with internet luring under § 2422(b), the district court should not have considered prior sentences imposed for that offense when determining his sentence. That is simply not the case. As *Hill* indicates, a district court may consider similar offenses for which the defendant was not charged "to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a)(6). "The district court [is] not required to sentence [a defendant] in a vacuum or disregard its substantial sentencing experience." *Hill*, 552 F.3d at 692 (citing *Gall*, 552 at 51–52).

Second, Anderson maintains that the district court misunderstood the elements of internet luring and believed the minimum ten-year sentence would be imposed "just for a defendant chatting with a minor." The internet luring statute makes it a crime to "knowingly . . . induce[] . . . [a minor], to engage in prostitution or any sexual activity . . . , or attempt[] to do so." 18 U.S.C. § 2422(b). Anderson suggests that § 2422(b) "requires that there be an actual engagement in prostitution or other criminal sexual activity, not just chatting, before the ten-year mandatory minimum sentence applies or a section 2422(b) offense is even committed." In fact, the statute is violated if a defendant simply *attempts* to persuade an individual to engage in

---

with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

criminal sexual activity. While the statute requires more than "just chatting"—specifically, the knowing inducement or attempted inducement of a minor—it does not require the commission of criminal sexual activity as Anderson suggests. *See, e.g.*, *United States v. Bauer*, 626 F.3d 1004, 1006–08 (8th Cir. 2010) (determining that a defendant who engaged in 17 online conversations with an undercover law enforcement officer who was posing as a 14-year-old girl was properly convicted under § 2422(b)). In sentencing Anderson, the court stated: "A person who engages in the chat leading up to an internet luring offense gets a 10-year mandatory minimum sentence. But someone who crosses state lines to prostitute a 13-year-old girl following an internet chat should get seven years or six years." The district court did not misstate the elements of § 2422(b).

Third, Anderson contends that the district court abused its discretion by comparing the Guidelines range for his offense with the Guidelines range for child pornography offenses, which are the result of "specific directions given to the Sentencing Commission by Congress." We have already upheld a similar comparison made by another district court and find no authority for Anderson's argument that such a comparison is erroneous. *See Hill*, 552 F.3d at 692 (finding that a comparison of the defendant's prostitution offense to possession of child pornography was not in error); *see also United States v. Battiest*, 553 F.3d 1132, 1137 (8th Cir. 2009) (determining that, even if Guidelines-recommended child pornography sentences are unduly harsh, the district court did not abuse its discretion by rejecting the defendant's policy argument for a lesser sentence).

The district court properly considered the § 3553(a) factors and varied upward from the Guidelines range due to the egregiousness of Anderson's conduct, the potential for unwarranted sentencing disparities, and the desire to protect the public from further crimes of Anderson. Based on this record, we conclude that Anderson's sentence was substantively reasonable.

B. *Conditions of Supervised Release*

Anderson challenges two special conditions of supervised release imposed by the district court: a lifetime prohibition from consuming alcohol and a lifetime prohibition from possessing materials depicting or describing sexually explicit conduct. Because Anderson did not challenge these conditions at sentencing, we review them for plain error. *See United States v. Curry*, 627 F.3d 312, 314 (8th Cir. 2010) (per curiam). "To qualify for relief under this standard, the appellant must show that the district court committed an error that is clear under current law, that the error affects his substantial rights, and that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 314–15 (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)).

As we have said before:

A district court has broad discretion to order special conditions of supervised release if each condition: 1) is reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a); 2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a); and 3) is consistent with any pertinent policy statements issued by the Sentencing Commission.

*United States v. Bender*, 566 F.3d 748, 751 (8th Cir. 2009) (quotations and citations omitted). In crafting special conditions, the district court must be careful to conduct an inquiry "on an individualized basis," looking at the specific facts of the defendant's case. *United States v. Davis*, 452 F.3d 991, 995 (8th Cir. 2006). "'[C]ourt[s] may not impose [] special condition[s] on all those found guilty of a particular offense.'" *Bender*, 556 F.3d at 752 (quoting *Davis*, 452 F.3d at 995) (vacating the district court's ban on possessing sexually stimulating materials under an abuse of discretion standard because the district court imposed the condition because the defendant was a sex offender). Furthermore, "[c]ourts generally cannot impose [] a condition . . . without evidence that the condition imposed is reasonably related . . . to the crime or

-11-

to something in the defendant's history." *United States v. Pruden*, 398 F.3d 241, 248–49 (3d Cir. 2005) (internal citation and quotation omitted). Plain error results if the district court fails to make the necessary individualized findings for imposing a special condition. *See United States v. Poitra*, 648 F.3d 884, 889 (8th Cir. 2011) ("The parties agree that the district court failed to make the necessary individualized findings, and this error was plain under current law from this Court." (citing *Curry*, 627 F.3d at 315)).

### 1. *Prohibition from Consuming Alcohol*

Anderson contends that the district court plainly erred by prohibiting him from consuming alcohol because the court merely speculated that he has a drinking problem with no evidence in the record to substantiate that such a problem actually exists. "We have held that a sentencing court abuses its discretion by imposing a total alcohol ban in circumstances where the record evidence does not support such a restriction." *United States v. Behler*, 187 F.3d 772, 779 (8th Cir. 1999) (citing *United States v. Bass*, 121 F.3d 1218, 1223–24 (8th Cir. 1997); *United States v. Prendergast*, 979 F.2d 1289, 1292–93 (8th Cir. 1992)). "In cases where the defendant's history or crime of conviction did not support a complete ban on alcohol, we have reversed." *United States v. Simons*, 614 F.3d 475, 480–81 (8th Cir. 2010) (finding that the district court did not plainly err by imposing an alcohol ban on a defendant who self-reported that he was manic depressive and who may have been deceptive about prior alcohol use); *see Prendergast*, 979 F.2d at 1293 (8th Cir. 1992) (striking special conditions that prohibited the defendant from using alcohol where "[t]here [was] no evidence indicating that [the defendant] suffer[ed] from alcoholism or that the use of alcohol in any way contributed to the commission of the offense for which he was sentenced").

Unlike *Prendergast*, alcohol played a role in Anderson's offense. Anderson provided the 13-year-old victims M.R. and J.J. with alcohol both before and after he engaged in sexual intercourse with M.R. Anderson was a member of the Facebook

groups "All i want to do is get drunk and take pictures!!!" and "A Drunk Girls Guide to Social Graces." In several of the Facebook chats Anderson had with adolescent girls, he described partying with adolescents. The probation office's sentencing recommendation noted that "alcohol was used in the instant offense as part of the grooming process." Furthermore, although Anderson reported that he does not have an issue with alcohol, alcohol was the cause of Anderson's only prior conviction. Given this evidence, the district court did not commit plain error by prohibiting Anderson from consuming alcohol. *See, e.g.*, *Simons*, 614 F.3d at 481 (determining that, although the facts might not be sufficient to justify a 20-year ban on alcohol, even assuming the district court erred, it did not rise to the level of plain error).

### 2. *Prohibition from Possessing Sexually Explicit Materials*

Anderson also contends that the district court plainly erred by prohibiting him from possessing materials depicting or describing sexually explicit conduct. Anderson argues that this condition was not based on an individualized determination but rather on his status as a sex offender.

In *Bender*, "we disapproved a special condition prohibiting the defendant convicted of a sex crime from possessing sexually stimulating materials based on the district court's abstract belief that sex offenders 'need to have a very tight rein' and have '[no] business reading a *Playboy* magazine.'" *United States v. Kelly*, 625 F.3d 516, 520 (8th Cir. 2010) (quoting *Bender*, 566 F.3d at 752). Similarly, in *Kelly*, we vacated a special condition prohibiting the defendant from possessing pornography because the district court failed to make an individualized determination that the prohibition was warranted; instead, the district court simply "'follow[ed] the special conditions of supervised release set out in the sentencing recommendation,'" which also provided no justification for the condition. *Id.*

Like the district courts in *Bender* and *Kelly*, the district court in this case failed to explain its reasoning for the special condition prohibiting Anderson from

-13-

possessing sexually explicit materials. Although the sentencing recommendation sets forth the condition, it too fails to provide a justification for it. *See Curry*, 627 F.3d at 315 (finding the district court erred by prohibiting the defendant, who failed to register as a sex offender, from possessing pornography without explanation). Nonetheless, Anderson is not entitled to relief under plain-error review. The district court should have articulated its reasoning, but we conclude, on this record, that its oversight does not require reversal.

First, Anderson fails to show how the error affected his substantial rights. *See Olano*, 507 U.S. at 734 (noting that the error "must have affected the outcome of the district court proceedings"). There is substantial evidence in the record from which the district court could have determined that the ban on pornography was appropriate in this case. Although this was Anderson's first offense for sexually predatory behavior, the record indicates that Anderson had been engaged in such conduct since at least 2006. During that time, Anderson routinely solicited adolescent girls as young as 13, most of whom lived locally. On a number of occasions, Anderson sent inappropriate images to the girls via text messaging or Facebook and asked for pictures of the girls in return. Given Anderson's history of predatory behavior and his need for sex offender treatment, there is little likelihood that the district court upon further consideration would remove the prohibition against possessing sexually explicit material. *See United States v. Demers*, 634 F.3d 982, 985 (8th Cir. 2011) (finding that, even if the district court plainly erred when it imposed a condition prohibiting the defendant from possessing pornography, the error did not affect the defendant's substantial rights "since [the defendant's] offense and history . . . ma[d]e it unlikely that he could carry his burden of showing that the condition would not have been imposed in any event").

Second, "[e]ven assuming [Anderson] could show the error affected his substantial rights, we retain 'the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public

-14-

reputation of judicial proceedings.'" *Poitra*, 648 F.3d at 889 (quoting *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009) (quotation and citation omitted). "This final prong of plain-error review is formidable and requires a showing of more than simple prejudice." *Id.* "[W]hether an alleged error seriously affects the fairness, integrity, or public reputation of judicial proceedings depends upon the nature and context of the error as well as the facts of the particular case." *Id.* at 890.

In this case, the condition prohibiting Anderson from possessing sexually explicit material was imposed following a thorough discussion of the egregiousness of Anderson's offense. The district court explained that Anderson "engaged in a pattern of grooming and soliciting others, engaged in a pattern of sending pornographic images to children," and "showed no remorse until he was caught, showed no regret, showed no moral compunction at all." The district court also noted that "[t]his is a picture of a man who is capable of repeating the conduct." *See id.* at 891–92 (finding that the defendant's risk of committing future sexual offenses supported the imposition of the special condition against possessing pornography and made the case distinguishable from prior decisions in which the district court's error affected the fairness, integrity, or reputation of the judicial proceedings).[4] Thus, prohibiting Anderson from possessing sexually explicit material is reasonably related to "the nature and circumstances of [Anderson's] offense" and the goal of "protect[ing] the public from further crimes." 18 U.S.C. § 3553(a)(1), (2)(C); *see also Poitra*, 648 F.3d at 891 ("[P]reventing a defendant—who has a demonstrated sexual

---

[4]Anderson argues that *Poitra* is not dispositive in this case because it violates this court's longstanding "one panel" rule. *Owsley v. Luebbers*, 281 F.3d 687, 690 (8th Cir. 2002) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel."). Actually, the panel in *Poitra* stated that, although "prior panels of this Court have held that similar errors satisfied the fourth prong for relief under plain-error review," "[t]hese holdings do not compel a similar conclusion here [] because '[t]he fourth prong [of plain-error review] is meant to be applied on a case-specific and fact-intensive basis.'" *Poitra*, 648 F.3d at 890 (quoting *Puckett*, 129 S. Ct. at 1433).

-15-

interest in children—from possessing all sexually explicit material is reasonably related to preventing the defendant from committing sexual offenses in the future."). The defendant bears the burden of persuading us to exercise our discretion in this case, *see Poitra*, 648 F.3d at 889, and he has not done so.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____