# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2215

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| John Fitzgerald Wallette, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 17, 2012
Filed: July 9, 2012

_____

Before RILEY, Chief Judge, WOLLMAN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury convicted John Fitzgerald Wallette of one count of aggravated sexual abuse of a child, in violation of 18 U.S.C. §§ 2241(c) and 1153. Wallette moved for a mistrial or, in the alternative, a new trial because one of the defense exhibits disappeared after the trial's conclusion. The district court[1] denied Wallette's motion and sentenced him to 360 months' imprisonment, followed by a lifetime of supervised release. The court also ordered that, upon his release, Wallette abstain from the use of alcohol and from possessing sexually explicit materials. On appeal, Wallette

_____

[1] The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

challenges these special conditions, as well as the district court's denial of his motion for a new trial. We affirm.

## I. *Background*

A grand jury indicted Wallette for the aggravated sexual abuse of his eight-year-old daughter, B.W. During the course of a three-day jury trial, the government offered evidence that in July 2008 B.W. reported to her mother that Wallette had sexually abused her with batteries.

## A. *Trial*

B.W. testified at trial regarding the alleged abuse. Her mother also testified. According to B.W.'s mother, after B.W. moved in with her, B.W. alleged that others also sexually abused her, including her mother's younger brother, her mother's husband, and a female friend of her mother. B.W. later admitted that none of these three individuals had abused her. Her mother testified that B.W. frequently lies. Tammy Ness, a social worker who treated B.W. from 2008 to 2010, also acknowledged that B.W. is a "story teller" but suggested that B.W.'s storytelling was a tool for coping with the sexual abuse.[2] Two other individuals, R.L. and M.P., testified that Wallette had sexually assaulted them while they were living at the Little Shell Youth Home where Wallette worked in Belcourt, North Dakota.

At 2:18 p.m. on Wednesday, February 2, 2011, Dr. Stacy L. Slaughter took the stand in Wallette's case-in-chief. Dr. Slaughter testified that she "met with [B.W.] on two occasions to do psychological testing." Dr. Slaughter also met with B.W.'s "foster mother, her legal custodian, her PATH foster care worker, and Tammy Ness." From these meetings, Slaughter produced an 11-page report that the court marked as "Defendant's Exhibit 32" and admitted into evidence over the government's objection.

---

[2]Both sides called experts to testify regarding B.W.'s medical examination. Their testimonies generally offset each other.

The first three pages of the report consisted of a summary of the reasons for the testing and relevant background information. On page four, Dr. Slaughter listed several of her observations from her meetings with B.W., such as her inability to sit still, use of baby talk, inattentiveness, and anxiety. The rest of the report summarized the results of psychological tests that Dr. Slaughter conducted. Dr. Slaughter explained the results of the tests and concluded on the final two pages of her report:

> [B.W.] is a child whose early years were marked by a great deal of chaos, instability, abandonment by her mother, and sexual abuse by her father. Not surprisingly, as a result, [B.W.] has had difficulties with emotional and behavioral regulation. Test results suggest that [B.W.] has some serious thinking problems. Specifically, [B.W.'s] thinking is mostly fantasy related and marked by distortions of reality. However, it is also possible that [B.W.'s] difficulties with expressing herself verbally may have also contributed to her [test] responses being scored too severely. . . . Overall, test results, historical data, behavioral observation, as well as behavioral evidence do not support a thought disorder diagnosis . . . at this time. Considering the level of trauma that [B.W.] has experienced in her early life, she is actually functioning quite well. . . . [W]ith continued support and intervention to reduce her emotional stress, [B.W.'s] thinking problems are likely to improve.

In a brief direct examination, Dr. Slaughter stated that the focus of her evaluation "was just to get a handle on what may or may not have been problems [B.W.] was suffering from and what might be helpful to her." It was not to determine whether B.W. had been sexually abused. With regard to B.W.'s storytelling, Dr. Slaughter testified:

> Based on the test results, [misrepresenting things and having fantasy-related thoughts] are things that she may be at risk for. However, in [B.W.'s] case in particular, I can . . . only speak to what—you know, the testing that I did on her and my results. And the results for her have more to do with her fantasy and the way she thinks about things. That's

-3-

a coping style, and children in particular use that coping style when they don't feel they have—they don't have access to or they don't have the ability to cope in ways that we might like them to otherwise. And so her thinking being fantasy related is kind of primitive and immature, and that would suggest kind of a link to some of the traumatic experiences that she's had because trauma does stunt people's growth and development.

Q. Trauma can be from numerous sources?

A. Trauma can be sexual abuse. Trauma can be, you know, neglect and witnessing domestic violence or being physically abused, those kind of things. That's trauma kind of in general.

Q. Living in a dysfunctional family?

A. There can be effects of that too.

On cross-examination, Dr. Slaughter stated that B.W.'s storytelling was "random" and

would happen, it seemed like, when she was stressed. And my report does indicate also that this is a child who had, at the time that I did the testing with her, quite a bit of emotional stimulation going on, which was what was contributing to the fantasy and to her problems with thinking, not a major mental illness, you know, such as psychosis or anything like that. She had a lot of emotional stuff going on.

The next morning, the jurors received their final instructions, and the lawyers presented their closing arguments. After the jury left to deliberate, the district court instructed the lawyers to "look over the evidence that's going to go in to the jury." Off the record, the lawyers reviewed the exhibits with the deputy clerk of court and confirmed the presence of each exhibit that the court had received. The trial concluded on February 3, 2011. The jury found Wallette guilty of aggravated sexual abuse.

On Monday, February 7, 2011, the deputy clerk of court informed Wallette's counsel that Defendant's Exhibit 32 was missing. The clerk of court also stated that, after the verdict, a law clerk had discovered another exhibit among the personal belongings of one of the jurors. The district court never found Defendant's Exhibit 32.

## B. *Sentencing*

Following Wallette's conviction, the United States Probation Office prepared a presentence investigation report (PSR). According to the PSR,

> Mr. Wallette reported he first used alcohol at the age of 16, and his current use is in social settings. He reported first using marijuana at the age of 11, with his last use just prior to his arrest. [Wallette] stated he used marijuana heavily during the five years prior to his arrest, indicating he consumed about 2 ounces a week. [Wallette] reported using cocaine, methamphetamine, and crack experimentally around the age of 27. . . . Mr. Wallette reported he has never been involved in a substance abuse treatment program.

In a Confidential Sentencing Recommendation to the district court, the Probation Office recommended a sentence of 360 months' imprisonment, followed by ten years' supervised release. The Probation Office recommended that Wallette "totally abstain from the use of alcohol," "submit to drug/alcohol screening at the direction of the U.S. Probation Officer," and "participate in a treatment program for alcohol and drug use" while on supervised release. The Probation Office also recommended that Wallette "not possess any materials . . . depicting and/or describing 'sexually explicit conduct' as defined at 18 U.S.C. § 2256(2) and 2256(8)." The Probation Office explained:

> John Wallette's sexual abuse of his daughter, BW, appears to have caused a great deal of harm to BW . . . . It also appears, based upon testimony, that [Wallette] has had a negative impact on several other

-5-

youth, while he was employed at Little Shell Youth Home. The impact of his abuse will never truly be known.

Mr. Wallette has an extensive substance abuse history. He has used marijuana on a daily basis for five years prior to his arrest. He has few friends, and lost his girlfriend as a result of his charges in the instant offense. Mr. Wallette has very few prosocial people to support him. Mr. Wallette will require a psychosexual evaluation and subsequent treatment to deal with his behavior that led to the instant offense. . . .

Supervision conditions will need to focus on the instant offense behavior and provide for his mental health. Conditions requiring him to participate in an evaluation and treatment for sexual offenders will be important, as well as conditions that restrict his access to youth and pornography. It would be recommended that the Court impose conditions that allow the defendant to be searched, submit to substance abuse testing, [be] restricted from the use of alcohol, and attend substance abuse treatment.

Prior to sentencing, Wallette moved for a mistrial or, in the alternative, a new trial because "serious questions exist[ed] as to whether or not the jury was provided all of the exhibits." The district court denied the motion and sentenced Wallette to 360 months' imprisonment, followed by a lifetime of supervised release. The court ordered Wallette "to abstain from the use of alcohol and all street drugs," to be "subject to random testing," and to "participate in a treatment program for alcohol and drug abuse." The court also ordered Wallette "not [to] possess any materials that are deemed to be or described to be sexually explicit in nature," including "all adult and child pornography." Wallette did not object to these conditions at the time of sentencing.

## II. *Discussion*

On appeal, Wallette argues that the district court abused its discretion by denying his motion for a new trial. Wallette also argues that the district court plainly

erred by prohibiting him from consuming alcohol and ordering him not to possess any sexually explicit materials while on supervised release.

### A. *New Trial*

Wallette argues that the district court abused its discretion by denying his motion for a mistrial based on the missing Defendant's Exhibit 32. We review for abuse of discretion the denial of a motion for a mistrial. *United States v. Gray*, 369 F.3d 1024, 1027 (8th Cir. 2004). "[A] defendant is . . . not entitled to a new trial unless the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *United States v. Espinosa*, 300 F.3d 981, 983 (8th Cir. 2002) (quotations and citations omitted). "We give the district court broad discretion to grant or deny a motion for mistrial because it is in a far better position to weigh the effect of any possible prejudice." *United States v. Diaz-Pellegaud*, 666 F.3d 492, 503 (8th Cir. 2012) (quotations and citations omitted).

"That the loss of a portion of the record made in the trial court may entitle an appellant to a new trial by order of the appellate court, we do not doubt." *Cochran v. United States*, 34 F.2d 441, 441 (8th Cir. 1929) (per curiam). But "[w]hether a new trial will be granted on that ground usually depends upon a variety of facts and circumstances." *Id*. In *United States v. Collins*, the Seventh Circuit held that the district court did not abuse its discretion by denying the defendant's motion for a mistrial when the jury did not receive during its deliberation some exhibits that were used to challenge the credibility of a government witness. 604 F.3d 481, 489–90 (7th Cir. 2010). The Seventh Circuit said that although "[i]t is possible . . . to imagine some circumstances in which even the inadvertent omission of certain evidence from the jury room could plausibly have [the] effect" of prejudicing the defendant, the defendant in that case was not prejudiced because the "trial was relatively short," the defendant's "counsel had discussed the exhibits during closing arguments," and "the missing exhibits [did not] contain[] information that the jury could not readily recall without the aid of the exhibits themselves." *Id*. at 489. "Absent some special

circumstance, a failure to make an exhibit available to a jury during deliberations is no cause for a mistrial, particularly when the trial was short and the information is such that it should be fresh in the jurors' minds." *Id*. (quotation and citation omitted).

Wallette argues that this case is readily distinguishable from *Collins* because Defendant's Exhibit 32 contained information that had not been mentioned in the courtroom.[3] Wallette contends that "because there is no indication that the jury had Exhibit 32 and more importantly had the opportunity to review it during its deliberations, a new trial is required."

We disagree with Wallette's assertion that there is no indication the jury had the opportunity to review Defendant's Exhibit 32. In a sworn affidavit, the deputy clerk of court stated that she reviewed all of the exhibits with the attorneys and that "[t]he complete set of confirmed exhibits received into evidence by the court were then handed over to [the law clerk] for transfer into the jury deliberation room." The law clerk stated in a sworn affidavit that she "received the trial exhibits directly from [the clerk of court] and immediately transported them to the jury deliberation room." According to her affidavit, the law clerk physically retained the exhibits "throughout the process of transferring them from the clerk of court to the jury deliberation room" and placed them "upon the table in the jury deliberation room." On this record, we conclude it reasonable to presume that the jury had the opportunity to review Defendant's Exhibit 32.

Even if Defendant's Exhibit 32 was not available to the jury during its deliberations, Wallette has not established that the omission prejudiced him. *See Espinosa*, 300 F.3d at 983. Wallette argues that Dr. Slaughter's report "was a crucial

---

[3]The district court noted, "We certainly could have had Dr. Slaughter be questioned at length about each and every paragraph in this report, but I felt that in the interest of judicial economy, the receipt of the psychological evaluation would be a much more efficient way to conduct this trial."

part of [his] defense," but he does not explain why. The report assessed B.W.'s psychological and intellectual abilities, but it did not determine whether B.W. had been sexually abused. Wallette stated in his brief that "Dr. Slaughter's report noted that [B.W.] makes up fantasy stories. Slaughter described these as a coping style for children who have suffered trauma experiences, including sexual abuse, or living in a dysfunctional family, and do not have the ability to cope in ways that we might like them to otherwise." Dr. Slaughter testified about B.W.'s fantasy stories on direct and cross-examination. Moreover, such evidence is not particularly favorable to Wallette because it suggests that B.W.'s fantasy stories could be a coping mechanism for sexual abuse.

Thus, Wallette has not met his burden of proving that the loss of Defendant's Exhibit 32 after trial resulted in a miscarriage of justice, and the district court did not abuse its discretion by denying his new trial motion.

B. *Special Conditions*

Wallette challenges two special conditions of supervised release that the district court imposed: (1) a lifetime prohibition from consuming alcohol, coupled with mandatory participation in a treatment program for alcohol and drug abuse and random drug and alcohol testing; and (2) a lifetime prohibition from possessing materials depicting or describing sexually explicit conduct. Because Wallette did not challenge these conditions at sentencing, we review them for plain error. *See United States v. Ristine*, 335 F.3d 692, 694 (8th Cir. 2003). "Plain error occurs if the district court deviates from a legal rule, the error is clear under current law, and the error affects the defendant's substantial rights." *Id*. (quotation and citation omitted).

"A district court has broad discretion to order special conditions of supervised release" as long as the conditions are "reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a); 2) involve[] no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a); and 3) [are] consistent

with any pertinent policy statements issued by the Sentencing Commission." *United States v. Bender*, 566 F.3d 748, 751 (8th Cir. 2009) (quotations and citations omitted). In crafting special conditions, the district court must be careful to conduct an inquiry "on an individualized basis," looking at the specific facts of the case. *United States v. Davis*, 452 F.3d 991, 995 (8th Cir. 2006). Courts may not impose special conditions categorically on all individuals convicted of certain offenses. *Bender*, 556 F.3d at 752 (vacating the district court's ban on possession of sexually stimulating materials under an abuse-of-discretion standard because the district court imposed the condition because the defendant was a sex offender).

## 1. *Prohibition from Consuming Alcohol*

Wallette contends that the district court plainly erred by prohibiting him from consuming alcohol, requiring him to submit to random drug and alcohol testing, and requiring him to participate in an alcohol and drug abuse treatment program. Although Wallette concedes that "[t]his Court in general has upheld no alcohol bans for defendants with proven substance-abuse problems," he contends that "[n]othing in the record . . . suggests [Wallette] has an alcohol or other substance abuse problem." We disagree. The Probation Office reported that Wallette "has an extensive substance abuse history" and, prior to his arrest, "used marijuana on a daily basis for five years," consuming approximately two ounces per week. He has used cocaine, methamphetamine, and crack "experimentally" and has never been in a substance abuse treatment program. In light of Wallette's substance-abuse problems, the district court adopted the Probation Office's recommendation "that the [c]ourt impose conditions that allow the defendant to be searched, submit to abuse testing, [be] restricted from the use of alcohol, and attend substance abuse treatment."

Although "a sentencing court abuses its discretion by imposing a total alcohol ban in circumstances where the record evidence does not support such a restriction," *United States v. Behler*, 187 F.3d 772, 779 (8th Cir. 1999), we have generally upheld alcohol bans where the record contains evidence to suggest that the defendant has an

-10-

alcohol abuse problem or a substance abuse problem that might be exacerbated by alcohol use. *See United States v. Mosley*, 672 F.3d 586, 589–91 (8th Cir. 2012) (finding that defendant's history of substance abuse and mental health issues supported a total ban on alcohol). Contra. *United States v. Walters*, 643 F.3d 1077, 1080 (8th Cir. 2011) (finding no evidence that the defendant was "drug dependent"); *United States v. Bass*, 121 F.3d 1218, 1224 (8th Cir. 1997) (same).

In this case, the record shows that Wallette "has an extensive substance abuse history," that he "used marijuana heavily during the five years prior to his arrest," and that he has experimented with other drugs. Wallette "has few friends" and "very few prosocial people to support him." The Probation Office recommended supervised conditions that "focus on the instant offense behavior and provide for [Wallette's] mental health." One such recommended condition was a "restrict[ion] from the use of alcohol." In light of this evidence, the district court did not plainly err by prohibiting Wallette from consuming alcohol and requiring him to submit to random drug and alcohol testing. Also, given Wallette's substance-abuse problems, the district court did not plainly err by requiring him to participate in an alcohol and drug abuse treatment program.

### 2. *Prohibition from Possessing Sexually Explicit Materials*

Wallette also contends that the district court plainly erred by requiring as a special condition of his release that he abstain from possessing materials depicting or describing sexually explicit conduct. Wallette argues that this condition was not based upon an individualized determination but rather on his status as a sex offender.

"When crafting a special condition of supervised release, the district court must make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements." *United States v. Wiedower*, 634 F.3d 490, 493 (8th Cir. 2011) (quotation and citation omitted). Plain error results if the district court

-11-

fails to make the necessary individualized findings for imposing a special condition. *United States v. Poitra*, 648 F.3d 884, 889 (8th Cir. 2011). The district court erred by failing to make any individualized determinations in this case. *See United States v. Kelly*, 625 F.3d 516, 520 (8th Cir. 2010) (vacating a special condition prohibiting the defendant from possessing pornography because the district court abused its discretion by failing to make an individualized determination that such a condition was warranted). Nonetheless, Wallette is not entitled to relief under plain error review.

First, Wallette does not show how the district court's error affected his substantial rights. *See Olano*, 507 U.S. at 734 (noting that the error "must have affected the outcome of the district court proceedings"). There is substantial evidence in the record from which the district court could determine that the ban on sexually explicit materials was appropriate. Wallette was convicted of aggravated sexual abuse of a minor, and evidence showed that he abused other children in the past. Given Wallette's history of sexual abuse and his need for sex offender treatment, there is little likelihood that the district court, upon further consideration, would remove the condition prohibiting him from possessing sexually explicit materials. *See United States v. Anderson*, 664 F.3d 758, 768 (8th Cir. 2012) (finding "substantial evidence in the record from which the district court could have determined that the ban on pornography was appropriate" and upholding the ban on plain error review); *United States v. Demers*, 634 F.3d 982, 985 (8th Cir. 2011) (finding that, even if a district court plainly erred by prohibiting the defendant from possessing pornography, the error did not affect the defendant's substantial rights since his offense and history made it "unlikely that he could carry his burden of showing that the condition would not have been imposed in any event").

Second, "[e]ven assuming [Wallette] could show the error affected his substantial rights, we retain the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public

-12-

reputation of judicial proceedings." *Poitra*, 648 F.3d at 889 (quotations and citations omitted). "This final prong of plain-error review is formidable and requires a showing of more than simple prejudice." *Id*. Wallette bears the burden of persuading us to exercise our discretion in this case, and he has not done so. *Id*. Wallette's history of sexual offenses supports the imposition of the special condition, and prohibiting him from possessing sexually explicit materials is reasonably related to the nature of his prior offenses against minors and to the goal of protecting the public from further crimes. 18 U.S.C. § 3553(a)(1); *Poitra*, 648 F.3d at 891 ("[P]reventing a defendant—who has a demonstrated sexual interest in children—from possessing all sexually explicit material is reasonably related to preventing the defendant from committing sexual offenses in the future."); *Anderson*, 664 F.3d at 769 (noting that the defendant did not persuade the court to exercise its discretion to remedy the error, even if he could show the error affected his substantial rights).

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

WOLLMAN, Circuit Judge, concurring.

Although I concur in the court's opinion, I write separately to voice my agreement with Judge Loken and Judge Bowman that the time has come for us to treat as waived, and thus not subject to plain error review, objections to special conditions of supervised release that are not timely raised in the district court.    See United States v. Deatherage, No. 11-2430, slip op. at 11, n.4 (8th Cir. June 26, 2012).

————————————————————

-13-