# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1883
_____

United States of America

*Plaintiff - Appellee*

v.

Daniel W. Waldron

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: January 10, 2022
Filed: June 2, 2022
[Unpublished]

_____

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.

_____

PER CURIAM.

Daniel Waldron pleaded guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court[1] sentenced him to 72 months' imprisonment. He appeals his sentence, arguing that the district court's sentence is substantively unreasonable. We affirm.

## I. *Background*

In February 2020, a Kansas City Missouri Police (KCPD) officer arrested Waldron while investigating a suspected stolen truck and its driver from an earlier encounter during the day. When officers asked Waldron if he had any weapons on him, he admitted that he had a loaded firearm. During their search incident to arrest, officers found a loaded Bryco semi-automatic handgun in Waldron's back pants pocket. Officers also found a bag with 3.54 grams of methamphetamine in Waldron's front pants pocket. Waldron also had a bag with 0.48 grams of methamphetamine and $269.97 in cash in a fanny pack around his waist.

During an in-custody, post-*Miranda*[2] interview, Waldron admitted that he had the firearm on his person and that he knew he was a convicted felon who could not lawfully possess firearms. He also admitted that the methamphetamine from the fanny pack was his and that he was a methamphetamine user.

Waldron was charged with one count of being a felon in possession of a firearm. A federal grand jury later indicted him on the same count. He pleaded guilty to one count of being a felon in possession of a firearm. With a criminal history

---

[1]The Honorable Roseann Ketchmark, United States District Judge for the Western District of Missouri.

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

category V[3] and a total offense level of 15, his presentence investigation report (PSR) calculated his Guidelines range between 37 to 46 months' imprisonment.

At his first sentencing hearing, Waldron requested a sentence of 37 months' imprisonment. The government, however, requested an upward variance for a sentence of 87 months' imprisonment. Waldron raised five facts for the district court to consider in support of his requested sentence: (1) his lack of education, (2) his long-term single parenting of his child, (3) his "extremely severe methamphetamine addiction" that led "to a lot of the other offenses . . . in his history," R. Doc. 26, at 10, (4) his good behavior in prison, and (5) his mental health diagnoses.

The government responded with a list of facts and arguments it believed favored a more lengthy sentence. These included: (1) that in the last 19 years, Waldron has been incarcerated for 18 misdemeanor offenses and six felonies, which demonstrates "near chronic and constant recidivism," *id.* at 14; (2) that his prior offenses include assault and fleeing law enforcement and that he has engaged in that conduct on multiple occasions; (3) that the facts of this case—Waldron being in a stolen car with a loaded firearm and methamphetamine—is "like history repeat[ing] itself," *id.*; (4) that he has continually violated the terms of his probation and supervised release; (5) that the instant offense was committed less than four months after he was released from custody following his second supervised release violation

---

[3]In August 2011, Waldron was sentenced for two counts of possession of a controlled substance, one count of first-degree tampering, and one count of resisting a lawful stop in Missouri state court. In April 2013, he pleaded guilty to one count of being a felon in possession of a firearm in the Western District of Missouri. He was released from custody for his felon-in-possession offense in April 2017. After his first revocation hearing in March 2018, his conditions of supervised release were modified, and he was ordered to enter into and complete an inpatient substance abuse treatment program. In July 2019, his supervised release was revoked, and he was remanded into custody. He was released from custody for his supervised release revocation in October 2019.

in his first felon-in-possession case; (6) that while "methamphetamine might be the root cause of some of these issues . . . . it should not absolve him of responsibility," *id*. at 16; (7) and that his actions involving stolen cars and firearms posed a "danger to the community," *id*.

Waldron argued that some of his difficulties arose from not being able to continue taking his medication for his mental health conditions after he was released from custody. He also explained that he had resumed taking his medication at the time of his sentencing hearing and that he had "tools that [he] didn't realize that [he] had before" to help him avoid falling back on his past criminal behaviors. *Id*. at 22.

Upon review, the district court agreed with Waldron that he has "an extreme meth addiction that has been a curse to [him] for years" and that some new legislation has suggested "that we shouldn't house addicts in prison. . . . [b]ut that addicts need treatment, and to learn tools like [Waldron] talked about." *Id*. at 24. The court acknowledged that Waldron "[didn't] appear to have a history of selling drugs." *Id*. at 25. It also observed:

> [T]he [PSR] notes that [Waldron] ha[s] quite a bit of drug addiction treatment and counseling and training under [his] belt even before [he] w[as] arrested on this offense. And the state of Missouri has spent a great deal of money trying to help [him] and incentivize [him] to . . . beat [his] addiction demons.

*Id*. at 27.

The district court expressed concern about "some significant domestic assault allegations" and Waldron's conviction for hitting the mother of one of his children, causing her to need stitches, as well as his "history of fleeing and going down highways, spinning out of control[,] and wrecking as [Waldron was] fleeing from police." *Id*. at 25. It stated that "that aspect of [Waldron's] background is one thing that the [c]ourt is looking at and it weighs kind of against [him]." *Id*.

-4-

As to his diagnoses for depression, anxiety, and PTSD, the district court noted that when he violated the conditions of his supervised release for the second time in his first felon-in-possession case he "didn't have or complain of this [mental health] history in the prior [PSRs]." *Id*. at 25–26. It noted that "it seem[s] as though it's just kind of culminated more in the last few years, which makes me believe that [Waldron's] . . . mental conditions aren't a factor in [him] using drugs, but [him] abusing drugs for so many decades has affected [his] mental stability." *Id*. at 26.

Lastly, the district court noted that Waldron's reassurances that he would turn his life around were the same things that he said at his sentencing hearing for his first felon-in-possession conviction in 2013. The court noted that he was given a sentence at the low end of his Guidelines range in 2013. The court commented that Waldron's risk to the public merited a sentence more likely to deter him from reoffending. The court stated "that is where this really strikes against [Waldron]." *Id*. at 27. The court then adjourned the first sentencing hearing and ordered a second sentencing hearing to permit Waldron time to address the government's upward variance request in the meantime.

At the second sentencing hearing, both parties renewed their requests for their preferred sentences. The district court then sentenced Waldron to 72 months' imprisonment largely adopting "the factors outlined by the government." R. Doc. 36, at 20. Those factors included a sentence that would: (1) be "sufficient but not greater than necessary to protect the public," (2) "promote respect for the law," (3) "deter [Waldron] from any further criminal activity," (4) consider "the nature and circumstances of the offense," and (5) consider his "history and characteristics." *Id*.

## II. *Discussion*

On appeal, Waldron argues that his sentence was substantively unreasonable because the district court (1) failed to give any weight to his mitigating factors—his methamphetamine addiction and mental health diagnoses—and (2) relied on the nature and circumstances of the instant offense as aggravating factors.

"We review substantive reasonableness for an abuse of discretion, taking into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *United States v. Anderson*, 664 F.3d 758, 764 (8th Cir. 2012) (cleaned up). "We may find an abuse of discretion where the sentencing court 'fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors.'" *United States v. Moore*, 565 F.3d 435, 438 (8th Cir. 2009) (quoting *United States v. Kowal*, 527 F.3d 741, 749 (8th Cir. 2008)). "[W]e give due deference to the court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *United States v. David*, 682 F.3d 1074, 1077 (8th Cir. 2012). "A district court does not impose a substantively unreasonable sentence merely because the district court attributes less weight to a defendant's personal problems." *United States v. Gant*, 663 F.3d 1023, 1032 (8th Cir. 2011).

Contrary to Waldron's argument, the district court fully considered his methamphetamine addiction. The record shows that it engaged in lengthy discussions of his addiction during both of his sentencing hearings. It agreed that he has a meth addiction but noted that he has received addiction treatment, counseling, and training even before being arrested for the instant offense. It also noted that the instant offense and Waldron's previous felon-in-possession offense "[don't] have anything to do with a drug addiction." R. Doc. 36, at 8. The district court was within its discretion to give Waldron's addiction the weight it merited based on the facts of the case. *See Gant*, 663 F.3d at 1032.

The district court also fully considered his mental health diagnoses. It noted that when Waldron violated the conditions of his supervised release for the second time in his first felon-in-possession case he did not mention having mental health issues. It stated that it believed Waldron's drug abuse has affected the worsening of his mental condition over the last few years, and not the other way around.

Here, the district court considered multiple other factors in determining its sentence, such as the need to protect the public, promoting respect for the law, deterrence, the nature and circumstances of the offense, and Waldron's history and characteristics. During the sentencing hearings, it specifically expressed concerns about his history of domestic violence and fleeing by car from police. It noted that he had seemingly "graduated to using a firearm," in reference to the instant offense and his first felon-in-possession offense. R. Doc. 36, at 8. It also considered the fact that he had made the same reassurances that he would turn his life around eight years ago at his prior sentencing hearing. On this record, the district court's upward variance was not substantively unreasonable. *See Anderson*, 664 F.3d at 764; *United States v. Henry*, 770 F. App'x 309, 311 (8th Cir. 2019) (unpublished per curiam) (affirming the district court's above-Guidelines sentence in a felon-in-possession case because the defendant had a history of substance abuse and assaulting and resisting police officers).

Lastly, Waldron takes issue with the district court factoring in his possession of methamphetamine during the commission of the instant offense. This argument fails because "factors that have already been taken into account in calculating the advisory Guidelines range can nevertheless form the basis of a variance." *David*, 682 F.3d at 1077.

### III. *Conclusion*

Accordingly, we affirm the district court.

_____