# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-1661
_____

United States of America

*Plaintiff - Appellee*

v.

Flando Cortez Selvy

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: January 10, 2022
Filed: June 7, 2022
[Unpublished]

_____

Before LOKEN, GRUENDER, and ERICKSON, Circuit Judges.

_____

PER CURIAM.

Flando Cortez Selvy pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced Selvy to a 120-month term of imprisonment, which was the statutory maximum sentence.

_____

[1]The Honorable James M. Moody, Junior, United States District Judge for the Eastern District of Arkansas.

Selvy appeals the court's calculation of his base offense level and one condition of his supervised release. We affirm.

## I.     BACKGROUND

The one incontrovertible fact in this case is that on or about July 11, 2017, Flando Selvy shot Dewayne Aikens in the head, mortally wounding him. Selvy claims that while he and Aikens were engaged in an argument in a carport, Aikens began to walk away, apparently intending to get in a parked truck. As he neared the truck, Aikens suddenly turned around and reached for a gun in his waistband with an intent to shoot Selvy. Selvy beat Aikens on the draw and shot him. Selvy claims he acted in self-defense.

Three witnesses in the truck—Jermere Garrett, Ned Lauderdale, and Dewayne Haley—saw something different. According to Garrett, Selvy and Aikens were not arguing, but merely talking. As Aikens was preparing to get into the truck, Selvy became agitated and started "talking outside his head," and shot his gun twice in the air. Aikens began to get into the vehicle and Selvy lowered his gun and shot Aikens in the head. Garrett testified that he never saw Aikens with a gun or reach for a gun.

Lauderdale's (Aikens' uncle) testimony was similar. He testified that Selvy shot Aikens in the head as Aikens was opening the truck door. Lauderdale said he never saw Aikens with a gun or gesture toward a gun that night. Haley rendered a similar account to law enforcement but added a chilling detail, testifying he heard Selvy say after shooting Aikens, "I told him I was going to kill him." Selvy denies making the statement.

All three witnesses testified that after Selvy shot Aikens, Selvy threatened to shoot them if they attempted to render aid to Aikens. Haley testified that Selvy said, "This mother-f*cker has to die." Eventually, the men slipped away and called for help, which arrived too late. Before law enforcement arrived, Clifford Earls, Selvy's uncle, appeared on scene and demanded Selvy surrender the firearm. Selvy handed

over the gun and Earls locked it in his vehicle. Officers arrived at the scene, collected Selvy's firearm, and discovered Aikens was carrying a firearm in his waistband. They also found a bullet shell casing of the same caliber as Selvy's gun on the ground in front of Aikens' body.

Selvy was charged with first-degree murder in state court and proceeded to trial. The trial ended in a mistrial when the jury was unable to reach a verdict. Federal authorities subsequently charged Selvy with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Selvy entered a guilty plea and proceeded to sentencing.

At sentencing, the government urged the district court to apply the cross reference found at U.S.S.G. § 2K2.1(c)(1)(B), which instructs courts to apply the "most analogous offense guideline" from the chapter regarding homicides if the defendant's firearm offense resulted in a death. The government contended that if the court did so, then a base offense level of 43 for first-degree murder would be the most appropriate. See U.S.S.G. § 2A1.1(a) (providing a base offense level of 43 for first-degree murder). Selvy disagreed, asserting that he acted out of self-defense and that the cross reference to any homicide offense was error. In the alternative, he urged the court to apply the voluntary manslaughter guideline. An evidentiary hearing was conducted at which the court received testimony from the three witnesses to the shooting as well as from Earls, an officer who responded to the scene, and Selvy.

At the close of the hearing, the court ordered the redaction of Selvy's alleged statement that he "told him I was going to kill him." The other factual objections to the presentence investigation report were either overruled or resolved. The court found that Selvy intended to severely injure Aikens and caused his death, and that Selvy's self-defense claim lacked credibility. The court noted that while the facts supported a finding of first-degree murder, it was going to give the "benefit of the doubt" to Selvy and apply the second-degree murder guideline. The court applied a base offense level of 38 for second-degree murder and reduced the offense level by

three for acceptance of responsibility, which yielded a total offense level of 35. With a criminal history category of III, Selvy's advisory guideline range was 210-262 months. Because the statutory maximum penalty was ten years, the guideline range became 120 months. The court sentenced Selvy to 120 months in prison followed by a three-year term of supervised release, specifically finding that Selvy "clearly poses a danger to the public if he's willing to discharge a firearm just because of an apparent apprehension that somebody may be reaching for a gun." Selvy appeals.

## II.   DISCUSSION

Selvy first argues the district court erred by finding that he committed second-degree murder rather than voluntary manslaughter when he shot Aikens.

"We review the district court's factual findings for clear error and its construction and application of the sentencing guidelines *de novo*." United States v. Raiburn, 20 F.4th 416, 422 (8th Cir. 2021) (quoting United States v. Stong, 773 F.3d 920, 925 (8th Cir. 2014)) (internal quotation marks omitted). "As long as the [factual] determination is plausible in light of the record as a whole, clear error does not exist." United States v. Rogers, 881 F.3d 1054, 1055 (8th Cir. 2018) (quoting United States v. Farrington, 499 F.3d 854, 859 (8th Cir. 2007)) (internal quotation marks and alteration omitted). A district court's "[c]redibility determinations are virtually unreviewable on appeal." United States v. Quinto-Pascual, 9 F.4th 797, 802 (8th Cir. 2021).

The record supports the district court's finding that Selvy committed second-degree murder. The district court had before it the uncontested portions of the presentence investigation report and the testimony of three eyewitnesses who indicated that Selvy and Aikens were not engaged in a heated confrontation. The evidence showed that Selvy trailed Aikens to the truck, fired two warning shots, and then shot Aikens in the head with no further warning. No independent fact supports Selvy's self-serving description of heat of passion or self-defense to support a finding of voluntary manslaughter. See United States v. Tunley, 664 F.3d 1260,

1264–65 (8th Cir. 2012) (affirming the district court's finding that the defendant committed second-degree murder rather than voluntary manslaughter for sentencing purposes because the record demonstrated the defendant "had adequate time to reflect on his intended course of action" before killing the victim). The court did not err in calculating Selvy's advisory guideline range.

Selvy also challenges Condition 14 of the terms of his supervised release, which requires participation in a substance abuse treatment program. He claims there are insufficient factual findings to justify the imposition of the condition. Because Selvy did not object at sentencing, we review his challenge for plain error. See United States v. Osman, 929 F.3d 962, 966 (8th Cir. 2019). "Plain error occurs if the district court deviates from a legal rule, the error is clear under current law, and the error affects the defendant's substantial rights." United States v. Wallette, 686 F.3d 476, 483 (8th Cir. 2012) (quoting United States v. Ristine, 335 F.3d 692, 694 (8th Cir. 2003)) (internal quotation marks omitted). If the basis for a special condition imposed by the district court is discernable from the record, reversal is not required. United States v. Smith, 960 F.3d 1107, 1109 (8th Cir. 2020).

Selvy has a history of numerous drug-related charges and convictions. He admitted to daily marijuana use from age 18 until shortly before his incarceration. Despite his daily use of controlled substances, Selvy acknowledged that he has never received substance abuse treatment. Based on these uncontested facts, Selvy's required participation in a substance abuse treatment program is reasonably related to sentencing factors identified in 18 U.S.C. § 3553(a), it will not be a greater deprivation of liberty than reasonably necessary to achieve relevant sentencing purposes, and it is consistent with the United States Sentencing Commission's pertinent policy statements. We find no plain error in imposing Condition 14.

## III.   CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.

_____